## Empire Fire Proofing Company v. William C. Comstock, et al.

### Gen. No. 11,896.

1. CONTRACT—*when trustees executing, are not personally bound by.* Where it appears from the contract in question, by the manner in which it is signed, as well as by the surrounding circumstances, that the parties signing the same as trustees were not acting for themselves but for a trust estate represented by them, the latter only is bound and not the individual trustees in their personal capacities.

2. CONTRACT—*relating to trust estates enforceable in equity.* Contracts made with trust estates, in the name thereof, are enforceable in equity, notwithstanding such estates are not legal entities.

Action of covenant. Appeal from the Superior Court of Cook County; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed July 11, 1905.

**Statement by the Court.** This is an action of covenant brought by appellant against appellees for work done under a building contract. The first and third counts of the declaration declare on an award alleged to have been made by one Charles T. Eiker, in pursuance of certain provisions of the contract. The second and fourth counts declare upon the contract, omitting the award. The court below held all of the counts insufficient and entered judgment for the defendants.

The material portions of the contract declared on are as follows:

"This agreement, made the twenty-fourth day of July, 1899, between Empire Fire Proofing Company, party of the first part ·(hereinafter designated the Contractor), and Estate of Charles Comstock, party of the second part (hereinafter designated the Owner).

"ARTICLE I. . That the contractor agrees to provide all materials and perform all work mentioned in specifications or shown on the drawings prepared by architect, Charles R. Ayars, for the fire proofing work in building at the corner of Sherman avenue and Davis street, Evanston, Illinois.

"ART. III. That value of extra or omitted work shall be computed by architect and shall be added to or deducted from contract price. In case of dissent, valuation shall be referred to an arbitrator, as provided in article IX.

"ART. V. Should the Contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the Architect shall be at liberty, after five days' written notice to the Contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the Contractor under the contract; and if the Architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the Owner or the Architect shall also be at liberty to terminate the employment of the Contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly fin-

ished, at which time, if the unpaid balance of the amount to be paid under his contract shall exceed the expense incurred by the Owner in finishing the work, such excess shall be paid by the Owner to the Contractor, but if such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. The expense incurred by the Owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such fault, shall be audited and certified by the Architect, whose certificate thereof shall be conclusive upon the parties, provided, however, if said Owner or Contractor shall dispute the justice of any of said Architect's decisions, then, either of them may have such disputed matter referred to arbitration, under Article IX of this Agreement, by serving notice of his demand therefor upon the other party within three days after receiving notice of such decisions.

"ART. VI. The Contractor shall complete the several portions and the whole of the work embodied in this Agreement by and at the time or times hereinafter stated, to wit: tile for first floor to be delivered within four weeks, and tile for the remaining floors and roof to be furnished as fast as required, partitions to be set as rapidly as the progress of building permits. Entire work to be completed within fifteen days after roof is on building.

"Time is an essential part of this Agreement, and if the Contractor's work is not in readiness as the condition of the building requires, or is not completed on or before the dates mentioned in this Article, or the extension of the same, as provided in Article VII, the Contractor shall forfeit to the Owner ten and 00-100 dollars for each and every day such work is delayed or remains unfinished, as agreed and liquidated damages.

"ART. VII. Should the Contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the Owner, or the Architect, or of any other contractor employed which may happen by fire, lightning, earthquake or cyclone, or by the

Empire Fire Proofing Co. v. Comstock.

abandonment of the work by the employes during a general strike, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the Architect within twenty-four hours of the occurrence of such delay. The duration of such extension shall be certified to by the Architect, but appeal from decision may be made to arbitration, as provided in Article IX of this contract.

"ART. VIII. The Owner agrees to provide all labor and materials not included in this contract in such manner as not to delay the material progress of the work, and in the event of failure so to do, thereby causing loss to the Contractor, agrees that he will reimburse the Contractor for such loss; and the Contractor agrees that if he shall delay the material progress of the work so as to cause any damage for which the Owner shall become liable (as above stated), then he shall make good to the Owner any such damage. The amount of such loss or damage to either party hereto shall, in every case, be fixed and determined by the Architect, subject, however, to the right of arbitration, as provided in Article IX of this contract.

"ART. IX. Any controversy or dispute arising under this contract shall be settled by the Architect, whose decision shall be final and binding upon the parties hereto, except that in the case of a dispute as to the value of extra work, or of work omitted, either party to this contract may appeal from the Architect's decision to arbitration, and to that end it is agreed that any said appeal shall be submitted to arbitration in the following manner, viz.:

"Either party desiring to arbitrate shall serve a notice on the other party, stating his grievance and his intention of appealing to Charles Eiker, of the Pioneer Fire Proofing Construction Company, who is hereby chosen and agreed upon as arbitrator in any such controversy.

"If said Arbitrator is unable, or refuses to act, then unless the parties hereto shall agree in writing upon an-

other Arbitrator within three (3) days after notice that the appointed Arbitrator cannot serve, then either party to this contract may apply to the President of the Chicago Architects' Business Association to appoint an Arbitrator, and any member of the Arbitration Committee of the Chicago Architects' Business Association, so appointed by the President of said Association, shall have the authority to act as Arbitrator under this contract. The Arbitrator named above, or his substitute so chosen and constituted shall have all the powers conferred on arbitrators by the Statutes of Illinois, and his ruling shall be final and conclusive as to all questions submitted to him for arbitration. Each party shall pay one-half the fee of the Arbitrator, in accordance with the scale of fees established by the Arbitration Committee of the Chicago Architects' Business Association.

"ART. X. It is hereby mutually agreed between the parties hereto that the sum to be paid by the Owner to the Contractor for said work and materials shall be $3,969.00 (thirty-nine hundred sixty-nine and 00-100 dollars). Additional three tile partition to be erected for 8½ cents and omitted for 8 cents per superficial foot, actual measurement, subject to additions and deductions, as hereinbefore provided, and that such sum shall be paid in current funds by the Owner to the Contractor in installments, upon written certificates of the Architect that payments have become due. Each certificate shall represent 85 per cent. of the Architect's estimate of the value of the labor and materials incorporated in the building since preceding certificate was issued. The 15 per cent, reserved, shall be payable when the final certificate is issued.

"If so decided on or before August 1, 1899, the Contractor agrees to put in the concrete filling, as specified, and to furnish and lay floor and roof-steps for an additional amount of $800.

"The final payment shall be made within thirty (30) days after this contract is fulfilled.

"If, at any time, there shall be evidence of any lien or

claim for which, if established, the Owner of the said premises might become liable, and which is chargeable to the Contractor, the Owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all·payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the Contractor's default.

"Art. XI.   It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials.

"In witness," etc.
    Signed:

> "Empire Fire Proof Company,          [Seal]
>                         J. A. Hammett.
>         Estate of Charles Comstock,   [Seal]
>                 Per
>         William C. Comstock,          [Seal]
>         Alice J. Comstock,            [Seal]
>         George S. Baker,              [Seal]
>                         Trustees."

McArdle & McArdle and Dunn & Hayes, for appellant.

George S. Baker and James S. Murray, for appellees.

Mr. Justice Smith delivered the opinion of the court.

The principal question presented by this record is whether or not the defendants, appellees, are liable personally in covenant on the contract declared on.

In solving this question we must first consider what is the meaning and intent of the contract. If the intention be to bind the defendants personally by the contract, then the defendants are liable. If on the other hand the clear intent and meaning is to bind the trust estate and thereby to create an equitable lien or charge thereon, which may be enforced in equity, the defendants are not personally liable.

By the express terms of the document it is an agreement between appellant and the "Estate of Charles Comstock, party of the second part, hereafter designated the 'Owner.' " The names of the defendants nowhere appear in the contract except in the signatures thereto. The mode of signing the contract corresponds with the first clause which designates the contracting parties. The name of the appellant company is signed by J. A. Hammett, who appears to be an officer of the company. The second party named in the first clause of the contract is then signed as follows:

"ESTATE OF CHARLES COMSTOCK        [SEAL]
                Per
        WILLIAM C. COMSTOCK,        [SEAL]
        ALICE J. COMSTOCK,          [SEAL]
        GEORGE S. BAKER,            [SEAL]
                Trustees."

It clearly appears from the averments of the declaration that the defendants, who were trustees of the Estate of Charles Comstock, were about to erect a fire-proof building at the corner of Sherman avenue and Davis street in Evanston, Illinois, and that Charles R. Ayars had prepared specifications and drawings therefor as their architect. For that purpose the contract in question was entered into, which provides that the contractor (appellant) under the direction and to the satisfaction of Ayars as architect, should provide the materials and perform all the work mentioned in the specifications or shown on the drawings for the fire-proofing work for the four-story brick and steel building mentioned, in consideration of the agreements of the owner therein made. Running through all the provi-

sions of the contract the covenants and stipulations are in terms between the contractor and the owner. The contract mentions no covenant or agreement between the contractor and the defendants. It clearly appears, therefore, that the defendants were acting as trustees and not as individuals, in a trust capacity, and not for themselves personally. This appears from the situation of the parties and the surrounding circumstances appearing from the averments of the declaration as well as from the contract itself. The clear intent and meaning of the contract is that the defendants agreed in their capacity as trustees of the Estate of Charles Comstock, in as far as they could legally bind the estate, but without assuming any personal obligation whatever, for it clearly appears that they intended to charge the trust estate and not themselves, and that appellant accepted the responsibility of the trust fund alone. It is true that the "Estate of Charles Comstock" is not a legal entity, capable of suing or being sued, nor is it a person or corporation. But that is not decisive of the question. Such an estate is known to equity, and contracts relating to trust estates may be made by trustees and may be enforced in equity.

As stated in Sperry, etc., v. Fanning et al., 80 Ill., 371, cited by appellant: "It will also be observed that there is a clear and marked distinction, in all the authorities, between the agreement of an agent who describes himself as contracting for a principal, and the covenant of a principal who contracts by and through an agent. The former may be regarded as the personal contract of the agent, while the latter may be held to be the undertaking of the principal."

In the above case Sperry was the guardian of Henry W. Kingsbury, a minor, who owned the premises upon which the buildings were erected. The agreement was made between Fanning & Co., plaintiffs, on one part and Sperry as guardian, on the other part, and it was executed by the defendant: "Anson Sperry, guardian of the estate of Henry W. Kingsbury." The court say that it will be observed that the contract was not made in the name of the

ward by a guardian or agent, and held that the addition of the words "guardian," etc., were a mere matter of description, and held Sperry liable on the contract on the ground that he executed the contract in his own name, not in the name of the ward, and did not assume to bind the ward, and did not limit the liability of the defendant by a provision that the plaintiffs should be paid from the assets belonging to the ward in his hands as guardian.

In the case under consideration, the contract was, as we have seen, made in the name of the trust estate, and every provision of the contract, as well as the manner of signing it, manifests the intention of the parties to bind the trust fund alone. Every fact and circumstance set out in the declaration rebuts the idea that the defendants assumed any personal responsibility for the work, but, on the contrary, show that the defendants contracted in the name of and for the estate and that plaintiff accepted the trust fund as security for the work and materials.

The case of Johnson v. Leman et al., 131 Ill., 609, holds that a person employed by a trustee to render services useful to the trust estate, without the order of the court, when the trustee does not profess or undertake to create any lien on the estate, and does not stipulate against his personal liability, must look to the trustee, and not to the estate. The court was not considering a case, like the one at bar, where there was an express charge upon the trust property created by the contract. The attempt there was to enforce a charge upon the trust property, upon the ground that appellant had rendered beneficial services to the trust estate under a personal contract with the trustee. This alone was held to be an insufficient ground for holding the trust fund liable.

The law is well settled that where one party makes a general contract with another for any lawful purpose, the addition of the words "trustee" or "as trustee" to his name do not relieve the party from personal liability. Where, however, it clearly appears that the contract is made for the benefit of a trust fund, and payment is to be made out

Empire Fire Proofing Co. v. Comstock.

of that fund, as in this case, or where a church corporation or other similar corporations, acting by trustees, make contracts, such fund, or such corporations are bound by the contract, and not the trustee, unless he has exceeded his authority as such.

In entering into contract relations like the one under consideration both parties are vitally interested in the character and terms of the agreement. If the plaintiff was unwilling to accept the fund as security for its payment, it should have insisted upon a personal contract with the parties acting on behalf of the fund. On the other hand, trustees executing a trust may be unwilling to accept a trust and enter into any contracts relating thereto, if he is required to assume a personal liability. Trustees have the right to bind the trust fund and that alone, and may make their contracts accordingly. In our opinion the contract under consideration does not bind the trustees personally and it must be so construed. Fowler v. Mutual Life Ins. Co., 8 Hun (N. Y.) 195; Thayer v. Wendell, 1 Gallison, 37 (U. C. C.).

It follows, in our opinion, that the defendants cannot be held upon the award alleged in certain counts of the declaration. The award is alleged to have been made by Charles Eiker under certain provisions of the contract. If there is no personal liability created by the contract, there can be no personal liability fastened upon the defendants by any thing done under and in pursuance of the terms and provisions of the contract, unless it appears that defendants either directly or constructively waived the contract and assumed such personal liability. Nothing of that character is averred in connection with the making of the award.

The award does not find that the defendants are personally liable for the amount. There is nothing in the award indicating that the arbitrator intended to find them personally liable for the amount of the award.

The judgment of the court below is affirmed.

*Affirmed.*