Edward Rothbart and J. M. Rosenfield, Trading as Rothbart and Rosenfield et al., Appellees, v. Metropolitan Trust Company, Trustee, under Trust Nos. 1126 and 1127 et al. Harry Gold, Appellant.

Gen. No. 41,096.

Opinion filed November 26, 1940.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, of Chicago, for appellant; VINCENT O'BRIEN and JOHN MERRILL BAKER, both of Chicago, of counsel.

EDWARD ROTHBART, J. M. ROSENFIELD, JAMES J. KELLY and J. R. COHLER, *pro se.*

Mr. Presiding Justice Friend delivered the opinion of the court.

The law firms of Rothbart & Rosenfield and Kelly & Cohler brought suit against Metropolitan Trust Company, as trustee under two separate liquidation trusts, to recover attorneys' fees from the respective trust estates for defending the trustee and trust managers in a prior suit, charging them with fraud, breaches of trust and seeking their removal. Harry Gold, who was one of the complainants in the prior proceeding, filed an intervening petition herein, alleging that he was the owner of certain units of beneficial interest in the two liquidation trusts, that he did not believe the complaints to be well founded in law, that the court was without jurisdiction to grant the relief prayed, and he asked for leave to intervene as a party defendant and file his motion to dismiss the complaints. Having been granted leave to intervene, he filed his motion to dismiss, on the ground that no basis for equitable relief was set forth in the complaints, that no allegation of demand on the trustee for payment of fees had been made, that the court had no jurisdiction to determine what the fees should be, nor to impress the trust properties with liens for fees in any amounts, and that the beneficiaries were necessary parties in any event. The chancellor having overruled his motion to dismiss, Gold has prosecuted this appeal from the order thus entered and also from the decree of the court.

For a clearer understanding of the litigation upon which the claims for attorneys' fees are predicated, a summary of the original litigation will be helpful. Two separate trusts are involved, one known as the Ada Rose Liquidation Trust, and the other Alane Liquidation Trust, the principal assets of each of which consist of separate apartment buildings in Chicago. These trusts were created pursuant to foreclosure and

proposals for the reorganization of first mortgage bond issues in the sum of $200,000 on each building, submitted to a bondholders' protective committee in 1935 by the owners of the equity. These proposals provided that the properties be reorganized under liquidation trust agreements, by which the trustee was to acquire title to the properties by redemption from foreclosure sale and to issue new securities in the nature of certificates of beneficial interest to the former holders of bonds, and that the owners of the equity of redemption should receive, in exchange for the conveyance of their equities, a percentage of the number of units represented by the certificates issued to bondholders. The proposals for reorganization further provided that contracts of management of five years' duration be entered into with Gold, whereunder he should manage the properties, secure tenants, collect the rents and receive compensation equivalent to 5 per cent of the gross receipts. The proposals were accepted by the committee, and notice of the adoption of the plan was given to all bondholders. Subsequently, the equity of redemption was conveyed to the committee, the plan was consummated and the trust agreements were formally executed.

In accordance with the requirements of the plans and the provisions of the trust agreements, Leo L. Ginsburg, Barnet L. Rosset, Charles Cohler and Robert Schiller were appointed as trust managers in each trust by designation respectively of the owners of the equity, the bondholders' committee, and the original purchasers of bonds of the respective issues. Toward the end of 1936 the trust managers, after making investigation and holding various meetings, became dissatisfied with the operation of the properties by Gold, charging that he had failed to increase the net income of the building, that the operating expenses were excessive, and that the revenue derived from the management of the property was insufficient to pay the

taxes, interest and principal on a mortgage, placed on the properties as part of the reorganization plan. Subsequently, the annual audits reflecting the operations of the year ending December 31, 1936, showed deficiencies in income which the trust managers charged to improper management, with the result that the trustee, upon recommendation of the trust managers, on April 30, 1937, served notice upon Gold that his contracts had been terminated.

Shortly after this notice was served upon Gold, he and one L. I. Schurman filed a complaint in equity against the trustee and trust managers in the nature of a so-called representative or class suit, wherein all the owners and holders of the beneficial certificates of both trusts were invited to join, praying for an injunction restraining the termination of Gold's management contracts, for the removal of the trustee and trust managers for various alleged breaches of trust and duty, for an accounting from the trustee and the trust managers because of various alleged improper expenditures and conversions of the property of the trusts, and for a construction of the trust agreements. This complaint when brought to issue was referred to a master in chancery, who conducted hearings for a period of 26 days, some of which lasted as late as eleven and twelve o'clock in the evening, resulting in findings by the master that all the charges of fraud and dishonesty leveled at the trustee and trust managers were unfounded, and that they had in all respects conducted themselves in accordance with the principles applicable to the conduct of trustees. The voluminous record of proceedings before the master was subsequently reviewed by the chancellor, who, after hearing arguments for four days on exceptions to the master's report, dismissed for want of equity the complaint of Gold and Schurman, as well as their counterclaim which had been filed in the proceeding. On appeals prosecuted to the Appellate Court the decree of the

circuit court was affirmed (*Gold v. Metropolitan Trust Co.*, 297 Ill. App. 632, 633 (Abst.)), and subsequently petitions for leave to appeal to the Supreme Court, filed by Gold and Schurman, were denied (*Gold v. Metropolitan Trust Co.*, 301 Ill. App. XXIII (Abst.)). The fees claimed by and allowed to plaintiffs herein are predicated upon services rendered by the two law firm plaintiffs respectively in defending the trustee and trust managers in the foregoing litigation.

It is first urged as ground for reversal that plaintiffs had no cause of action on which to predicate an independent suit at law or in equity until there had been a demand on and refusal by the trustee to pay plaintiffs such fees as they claimed for the services rendered. This contention is untenable for the following reasons. Robert Cohler, one of the trust managers, testified that a demand for fees had been made on the trustee or trust managers, who took the position that since there had been so many charges and countercharges made in the case, the question of fees ought to be submitted to a court, "rather than open up the way for any further attack by Mr. Gold." Moreover, it has frequently been held that the filing of a suit in itself constitutes a sufficient demand. (*McConnaughy v. Gage*, 252 Ill. App. 17, 21; *Albert Pick & Co. v. Spoor*, 212 Ill. App. 612.) The primary object of a demand is to afford the defendant an opportunity to perform his obligations without being subjected to the inconvenience and expense of litigation. Therefore, where it appears that a defendant could not or would not avail himself of the opportunity offered, a demand is unnecessary. (1 Corpus Juris Secundum, sec. 27 (d), p. 1070, 1071.) Gold's counsel argue that the pleadings do not disclose that there was any refusal on the part of the trustee to pay plaintiffs' claim. However, the answer filed by the trustee called for strict proof as to substantially all the allegations in plaintiffs' complaint, and expressly denied that the

sums claimed were due and unpaid, and that any amounts allowed should be impressed as a charge and lien upon or allowed and be paid out of the assets of the respective trusts. In view of the position thus taken by the trustees, it would be idle to contend that a demand upon them would have been availing to plaintiffs.

It is next urged that even if a demand had been made on the trustee and refused, plaintiffs' remedy would be by suit at law against the trustee individually rather than a proceeding in equity seeking recovery from the trust estates. Defendants' counsel, conceding that under certain circumstances the trust estate may become liable directly to third persons on contracts made with the trustee, argue that there is little tendency in modern law to relieve the trustee of personal liability on contracts made by him in the administration of the trust unless, in contracting with third persons, he stipulates in the contract that he shall not be personally liable, and they say that even a provision in the trust indenture which provides that the trustee shall not be personally liable on contracts made by him in the administration of the trust, and that persons entering into such contracts shall look solely to the trust estate, does not of itself preclude the trustee from being personally liable if he does not contract in such a way as to exclude personal liability, even though the provision is known to the other party of the contract, citing *Review Printing & Stationery Co. v. McCoy,* 291 Ill. App. 524; *Allegheny Tank Car Co. v. Culbertson,* 288 Fed. 406. In the case at bar each complaint sets forth Article V of the trust agreements, which provides that the trustee shall not be personally liable on contracts made by it, and that every contract entered into by the trustee shall expressly stipulate against personal liability of the trustee. Defendants' counsel take the position, however, that plaintiffs did not sufficiently rely on this provision of the trust in-

strument in their complaint, that in reference to the nature of the agreement between the trustee and the attorneys, the complaint merely alleges that "plaintiffs further alleged that they accepted the employment referred to above with full knowledge of and subject to the provisions of Article V of each of said trust agreements, and therefore agreed to look solely to the trust estates for payment of all sums due them thereunder," and that this allegation amounts to a mere conclusion of the pleader that knowledge of the provisions of the trust instrument had the effect of making the agreement between the trustee and plaintiffs an agreement to look solely to the trust estate, there being no express averment that the contract so provided or that the contracting parties agreed to look solely to the trust estate. However, the record does not bear out this contention. The evidence shows that plaintiffs in fact had waived the personal liability of the trustee and trust managers, and one of them, J. R. Cohler, testified that he knew that the trustee and the trust managers were not personally liable for the payment of plaintiffs' charges. Moreover, the facts and circumstances disclosed by the complaint and of the entire proceeding indicate that plaintiffs were thoroughly familiar with the provisions of the trust agreements, and the nature of the services rendered by them, coupled with the allegations of the complaint and the fact that they filed this suit in equity against the trust estates, clearly indicates that they accepted their employment in recognition of and subject to the provisions of the trust instrument. Courts have gone so far as to hold that the agreement of a creditor to look solely to the trust estate rather than to a trustee personally may be implied from the facts and circumstances of a particular transaction. (*O'Connell v. Horwich*, 284 Ill. App. 554, 560.) This doctrine is set forth in 2 Scott on Trusts, sec. 263.2, p. 1481, as follows: "Where, however, the other party to the contract has notice of the provision,

it may be considered with other facts in determining whether it was the understanding of the parties to the contract that the trustee should not be personally liable." And in *Empire Fire Proofing Co. v. Comstock*, 121 Ill. App. 518, where, although a contract was signed by the trustees, no express waiver of personal liability was contained therein, the court said that the waiver of personal liability "appears from the situation of the parties and the surrounding circumstances appearing from the averments of the declaration as well as from the contract itself." There was also in this trust agreement an express provision that creditors are entitled to have their claims paid out of the trust estate, and the courts have generally held that persons to whom a trustee has incurred liability in the administration of the trust can by a proceeding in equity reach trust property and apply it to the satisfaction of their claims. (2 Restatement of Trusts, sec. 270, p. 833; 2 Scott on Trusts, sec. 267, p. 1504, and numerous cases there cited by the author.)

A third contention made by defendants' counsel is that the holders of certificates of beneficial interest in the trust are necessary parties to the proceedings, because of the adverse interests of the trustee and the beneficiaries. Plaintiffs call our attention at the outset to Article XIV of the trust agreements, which contain the following provisions: "In all actions, suits and proceedings at law or in equity in any way affecting or relating to the Trust Property or any part thereof or the title thereto, the Trustee shall be deemed the representative of the beneficiaries hereunder and in no case shall it be necessary to notify any Holder of a Certificate or Certificates of Interest of, or make any such Holder a party to, any such action, suit or proceeding, for the purpose of binding or concluding such certificate holder." We find from the authorities that even in the absence of such an express provision, the determination of the question whether beneficiaries should

be made parties to a suit affecting the trust rests in the sound discretion of the court, and depends upon the facts and circumstances of each case. (*Suburban R. Co. v. City of Chicago*, 204 Ill. 306, 319; *Chicago B. & O. R. Co. v. Commerce Commission*, 364 Ill. 213, 223.)

It appears from the additional abstract filed by plaintiffs that after the complaints had been lodged herein and prior to any hearings thereon letters were sent by the trustee to all the beneficiaries of the trust, advising them of the filing of the complaints, the amount claimed by plaintiffs, and details with respect to the services, and these letters specified that the matter had been set for hearing, giving the date and hour of the hearing, the name of the judge and the number of the courtroom in which the hearing was to be had. Moreover, Gold, who actually did intervene by leave of court, is not in a position to be heard to complain of the nonjoinder of other beneficiaries who were notified of the hearing but did not intervene. Although he came into the proceeding and filed a motion to dismiss the complaints, he never raised the question of nonjoinder, nor did he ask to bring in additional parties. Therefore, we think that under the express provisions of Article XIV of the trust deed and for the other reasons stated, the holders of certificates of beneficial interest were not necessary parties, and Gold is not now in a position to urge the contention made.

The remaining point urged is that even if the court had jurisdiction to determine proper allowances to counsel, the fees allowed as liens against the trust estates are grossly excessive. Rothbart and Rosenfield, attorneys for Metropolitan Trust Co., the trustee, requested fees of $15,000, and were allowed $9,000. Kelly and Cohler, attorneys for two of the trust managers, requested $7,500 in fees, and were allowed $4,500. Both Rosenfield and Cohler testified in detail as to the services rendered, and produced service sheets containing time entries and service items. These documents

and Rosenfield's testimony indicate that Rothbart and Rosenfield had devoted 1,361 hours in connection with the litigation, upon which the claim for services is predicated. Cohler detailed the services of his firm, and estimated that they had spent in excess of 1,000 hours, not counting duplication of services by two members of the firm, and that the total time spent by both the members of the firm would probably exceed 1,500 hours. The chancellor was not convinced that this amount of time had been required, and therefore cut the respective claims for services to the amounts stated, and the question presented for determination is whether the allowances are fair and reasonable. Gold's counsel concede that it is patent from an examination of the record that valuable services were rendered by plaintiffs. Although present at all the hearings in this proceeding, Gold's counsel did not cross-examine any of plaintiffs' witnesses. In fact, the chancellor extended them an opportunity to offer evidence, but it was declined. The charges made against the trustee and comanagers in the original litigation predicated upon fraud and misconduct were of a serious nature, and it became necessary by reason of the circumstances that the trustee and trust managers be represented by separate counsel. The propriety of this procedure was conceded by Henry P. Chandler, who was called as a witness for defendants. The litigation in which the services were rendered was extremely complicated and covered a period of approximately two years in all. During the 26 days of trial before the master counsel were required to be present throughout the day and part of numerous evenings to participate in the hearings, and in addition thereto they had to prepare the case from day to day, take part in interviewing and consulting witnesses, examining the law and the records of the trusts and other documents bearing upon the issues involved. Thereafter they were required to examine the findings

of fact, the proposed findings submitted by Gold, and to submit their objections to the master and their exceptions to the chancellor. The argument on the exceptions consumed four days, and considerable time and effort was spent in preparing a decree and appearing in court in connection with Gold's endeavor to have the decree modified. They also appeared in the Appellate Court in connection with the application of Gold and his associates for a writ of mandamus and prohibition against Judge NIEMEYER, which was denied, and after the appeal had been perfected they were required to prepare an additional abstract, briefs, and to argue the case orally. Mr. Chandler testified on behalf of defendants that notwithstanding the extensive services rendered by plaintiffs, a reasonable fee would be $7,000. He based his conclusion largely on what he considered an amount commensurate with the value of the trust estates, and admitted that if the trust managers or trustee had agreed to pay the plaintiffs personally and had authorized them in effect to "go into this case now, and don't leave any stone unturned to vindicate me, and whatever the charge is, I will be responsible for it," the sum claimed would not be unreasonable. He added, however, that because there are many trustees in Chicago who are capable of acting efficiently as trust managers, there is a very definite limit related to the income from the property and the value thereof "upon what can fairly be paid to the attorneys for the trustee and trust managers in carrying that litigation to keep them in office." After carefully reviewing all the testimony on the subject of fees, and bearing in mind that plaintiffs succeeded in defending the trustee and trust managers from serious charges of fraud and misconduct, we do not regard the fees as excessive. The evidence discloses that as a result of the original litigation and the successful termination thereof substantial improvement was effected in the trusts from a monetary standpoint, and plaintiffs are entitled to

be reimbursed for what we consider reasonable charges made in the successful termination of that litigation.

We find no reason for reversing the decree of the circuit court or modifying the amount allowed. The decree is affirmed.

*Decree affirmed.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.