PEOPLES BANK BUILDING, INCORPORATED, Plaintiff-Appellant, *v.* PIXLEY & EHLERS, INCORPORATED *et al.*, Defendants-Appellees.

(No. 56344; )

First District—December 15, 1972.

Shaffer, Seelig, Mandel & Shapiro, of Chicago, (Ellis Shaffer and Kenneth S. Haberman, of counsel,) for appellant.

Levy and Erens, and Edward A. Gorenstein, both of Chicago, (Earl B. Slavitt, of counsel,) for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This suit was brought by plaintiff-lessor against two lessees and their guarantor to recover damages caused by the lessees' alleged breach of an extension of the lease for the rental of certain restaurant premises. After plaintiff had presented its case, the trial judge, hearing the case without a jury, granted defendants' motion to dismiss and entered a judgment in favor of defendants, from which plaintiff now appeals.

Three contentions are presented on appeal:

(1) The lessees validly exercised their option to extend the lease for a five-year period.

(2) The lessor properly notified the lessees of their breach of the terms of the lease prior to bringing this suit.

(3) The trial court erred in dismissing the cause and entering judgment in favor of defendants.

As of June 8, 1953, the entire building located at 1540 West Madison Street, Chicago, was owned by P & E Service Corporation, and the portion of the premises in question was occupied under lease by defendant Pixley & Ehlers, Inc., for use as a restaurant.

On June 8, 1953, Pixley & Ehlers, Inc., and P & E Service Corporation entered into a new ten-year lease for the period beginning July 1, 1953, and ending June 30, 1963. This will be referred to as the original lease, under which the lessor's interest was assigned to plaintiff on May 31, 1963.

On July 26, 1962, the original lease was amended by an agreement which extended its term for five years from July 1, 1963, through June 30, 1968, and which gave lessee an additional five-year extension option from July 1, 1968, to June 30, 1973. This option was to be exercised by lessee by giving lessor written notice 180 days before June 30, 1968, the last day of the original lease as extended. All the terms and covenants of the original lease were to continue in full force, and the rental was to continue at $1000 per month.

On or about May 31, 1963, Pixley & Ehlers, Inc., subleased the restaurant premises to defendant West Restaurant Corp. for the period June 1, 1963, through June 28, 1969. The sublease recited the existence of the option to extend the term of the lease for the additional five-year period ending June 30, 1973. West Restaurant Corp. agreed to comply

with all of the covenants of the original lease as amended by the extension agreement, and plaintiff consented to the sublease, but without releasing Pixley & Ehlers, Inc. The obligations of the sublessee were guaranteed by defendant Victor West.

The first conversation which took place in connection with defendants' exercising their option to extend the lease beyond June 30, 1968, was in July or August, 1967, when defendants' attorney called Samuel F. Hillman, president of plaintiff corporation. When the attorney suggested a reduction in rent, it was refused by Hillman and the discussion ended. About a month later, defendants' attorney again contacted Hillman by telephone and told him that defendants would exercise their option to renew the lease.

In the fall of 1967, Victor West visited Hillman to discuss a possible plan for expanding the leased premises. During this discussion, the two parties resolved all of the various things that were going to be done in relation to the option to renew the lease. West requested, and Hillman agreed, that without charging any more rent, plaintiff would provide additional space in the building adjacent to the restaurant for the creation of a private dining room, but that lessees would remodel the added space at their own expense. It was also agreed that the lessor would pay for the installation of separate heating and hot water facilities for the entire leased premises, but that the lessees would pay for the fuel, maintenance, and repairs of said facilities.

Mrs. Ellsworth, Hillman's secretary, secretary of plaintiff corporation and manager of the instant premises, was also a party to this conversation. When West was ready to leave, Hillman directed Mrs. Ellsworth to proceed with getting estimates for the work which had been agreed upon. She contacted Frank Ueker, a general contractor who had been doing the repair and maintenance work on the premises for about 20 years. Ueker was directed by Hillman to discuss the remodeling with West and to proceed with the job at West's convenience. As West was concerned about the cost of the heating facilities, Ueker was also directed by Hillman to ask the gas company to make a survey of the leased premises and determine the heating cost. This survey was done to West's satisfaction.

In November, 1967, Ueker met with West at the restaurant to discuss the remodeling which was to be done at West's expense. West was informed by Ueker that the contractor would have to make his own sketches, find out the building requirements, and get an estimate of the cost before starting. They also discussed what was to be done about the heating facilities, and Ueker informed West that installation of the new

heating and plumbing would be done as soon as the weather moderated.

On December 28, 1967, three days before the expiration of the lessees' 180-day option to renew the lease, defendants Pixley & Ehlers, Inc., and West Restaurant Corp. delivered a letter to plaintiff which stated:

"We, Pixley & Ehlers, Inc., a corporation, lessee of the premises at 1540 West Madison Street, Chicago, Illinois and West Restaurant Corporation, sub-lessee of said premises under lease dated May 31, 1963, as Amended or Supplemental, hereby exercise option to renew the term of said lease pursuant to terms of paragraph 2 of the Extension Agreement of July 26, 1962, for the period of July 1, 1968 to June 30, 1973. Such extension shall include conditions orally agreed upon to be reduced to writing by the parties within 45 days of the date hereof."

This document was approved in writing thereon by the lessor.

Defendants admitted that one of them was to have prepared a written memorandum of the oral agreements referred to in the letter, and asserted that such a written memorandum was prepared and submitted to plaintiff. Plaintiff, however, denied that it ever received any such written memorandum.

In the latter part of March, 1968, when Ueker had collected all of the estimates and cost information, he had another meeting with West. Ueker informed West that the cost of remodeling would be about $2000, and West replied that he would have to think it over. In April, 1968, Ueker again came to the restaurant to ask West about the work, and West answered, "I don't know why I should put $2000 in this building when I don't own it." West never authorized Ueker to do any remodeling work.

One morning during the first week of May, 1968, Mrs. Ellsworth was informed that the restaurant had not opened. Since no notice of defendants' intent to cease operations had been received, she went to the premises to investigate. The restaurant was locked from the outside and she had no key, but she looked in the windows and saw soiled dishes on the tables and food on the counters. No one was inside the restaurant. She tried unsuccessfully to get in touch with West. Eventually, she reached someone in the Pixley & Ehlers, Inc., office, but could get no information concerning the restaurant from that person. She returned to the restaurant, had the lock sawed off, and entered only to find the place "a mess."

Plaintiff regained possession of the premises within a week after they were vacated. No rental was ever received from defendants after June 30, 1968.

Hillman did not personally send a notice of default to any of the de-

fendants. However, around June 1, 1968, he directed his attorney to do so and to take steps to enforce the lease. Accordingly, a letter was sent to the defendants on June 18, 1968, which stated that plaintiff believed the lease to be binding on the parties; that defendants were delinquent because the May and June rent and a water bill were unpaid; that legal action would be taken if the delinquency were not cured; and that plaintiff expected rent thereafter to be paid more promptly. The rent to be paid thereafter could, of course, refer only to the period covered by the extension in question.

On June 24, 1968, plaintiff's attorney received a letter from defendants' attorney (who appears to have interpreted the previous letter the same way), claiming that the extension of the lease was of no force and effect since the letter of December 28, 1967, was a conditional exercise of the option to renew, and "(a) The conditions orally agreed upon were not reduced to writing because of [plaintiff's] refusal to do so. [and] (b) The conditions orally agreed upon were not performed and, in fact, performance was refused by Mr. Sam Hillman."

No further correspondence took place between the parties until the present suit was filed on May 8, 1969.

After plaintiff presented its case, defendant made a motion to dismiss plaintiff's case on three separate grounds: (1) There was no valid exercise by defendants of the option to extend the lease beyond June 30, 1968; (2) No notice of default had been served upon defendants; and (3) Plaintiff had no standing to sue since two months after filing the suit, Hillman, being the sole shareholder, gave all of the stock of the corporation to a charity without reserving the right to prosecute this lawsuit. After rejecting out of hand (and properly so, in our opinion) the third ground stated for the motion, the trial court sustained defendants' motion for dismissal.

■■ Plaintiff's first contention on appeal is that defendants' letter of December 28, 1967, validly exercised their option to renew, thereby creating a new five-year lease. Plaintiff urges that the first statement of such letter, "We * * * [the tenants] * * * hereby exercise option to renew the term of said lease * * * for the period of July 1, 1968 to June 30, 1973," is an unequivocal statement of defendants' intent to exercise the option, and that defendants are now bound by the terms of the lease as extended.

Defendants argue, however, that the second sentence of their December 28 letter, "Such extension shall include conditions orally agreed upon to be reduced to writing * * *," made the notice a conditional exercise of the option, dependent upon, first, an acceptance by the lessor of

the additional conditions, and, second, the preparation of a written memorandum as to those conditions within a 45-day period. Defendants urge, then, that since the oral conditions were not accepted and put into writing, the prerequisite for the valid exercise of the option was not met, and the lease was not renewed.

Defendants cite *Bernier v. Benson*, 21 Ill.App.2d 532, 159 N.E.2d 39, as supportive of their contention that their December 28 letter was only a conditonal exercise of the option. In that case, the notice to exercise an option to renew a lease which was sent to the lessor contained a statement of intent to exercise the option and a statement to the effect that the lease would be void at the option of the lessee if a license to operate a nursing home were not renewed through no fault of the lessee. The court held that the option was not validly exercised because, among other reasons, the condition imposed upon the lessor as to the license was not within the terms of the original lease and was, therefore, not an acceptance of the lessor's offer to renew, but a rejection of that offer manifested by the lessee's counter-offer.

The *Bernier* case is not in point. In that case, the conditions set forth in the notice to exercise the option had not been previously discussed between the lessor and the lessee, and had been inserted into the notice by defendant's unilateral action. Therefore, the condition was a new element in the negotiations between the parties which the lessor had to consider and either accept or reject. In the instant case, however, the conditions as to the additional restaurant space and the new heating facilities had already been discussed and agreed upon in the fall of 1967, so that there was no counter-offer for the lessor to accept or reject. The actions of the parties bear out the fact that there had already been an agreement as to the additional conditions. Even before defendants had drafted their notice to exercise the option, plaintiff-lessor had hired and sent a general contractor to defendants' restaurant to determine the cost of the new heating facilities and to start with the remodeling work, and defendant West had met with the contractor to give him an idea of how he wanted the space remodeled. And after the notice had been sent, there were at least two more meetings between the contractor and West, the subject of the meetings being the agreed-upon remodeling work.

It seems clear, too, that such actions show the intent of the parties to renew the lease. It would seem odd, indeed, that the parties would agree to costly remodeling work if they did not intend to lease or use the remodeled premises long enough to justify their investment. It is also to be remembered that the notice of the exercise of the option was drafted by defendants' attorney who was well aware of the difference between

an unequivocal and a conditional exercise of an option. If it had been defendants' intention to make the exercise of the option conditional, the first sentence would not have been a complete exercise of the option with no reference whatsoever to any condition, and the second sentence would not have referred to conditions already agreed to, but, rather, subject to the searching of an agreement thereto. In other words, the only condition on the basis of which defendants now seek to excuse themselves from the obligations of the lease, is the reduction to writing of additional terms already agreed to (and to a considerable extent acted upon), the preparation of which writing defendants admit was to be their responsibility. The unconditional and completeness in character of the first sentence of the letter gives the clear impression that it expressed the intention of the parties. And the second sentence evidences no doubt as to the further agreement already in existence. That West later may have had a change of heart (as the evidence shows that he did), stands as the only reason defendants did not submit the written supplement as they had agreed to do.

■■ The testimony (which was apparently admitted by agreement on the proposition that the document contained an ambiguity), conclusively establishes, in our opinion, that defendants sought to "eat their cake and have it too," the basic intent and purpose of the letter being to make sure that the defendants had, at the eleventh hour, exercised their right to renewal of the lease. In this, there is to be borne in mind, of course, the principle that a written instrument will be construed most strictly against the party drawing it. *Crest Commercial, Inc. v. Union-Hall, Inc.*, 104 Ill.App.2d 110, 117, 243 N.E.2d 652, 656.

In *Stephens v. Nixon*, 338 Ill.App. 275, 284, 86 N.E.2d 278, 282, the court said:

> "Where the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done. * * * But where the parties have assented to all the terms of the contract [as is the case here], the mere reference to a future contract in writing will not negative the existence of a present contract, * * * *"

Defendants urge, however, that even if the option were validly exercised, plaintiff is precluded from maintaining this action because plaintiff failed to serve an appropriate notice of default. Under the terms of the lease, plaintiff-lessor was required to give ten days' written notice of any default under the lease before commencing legal action.

When the restaurant was not opened in early May, 1968, plaintiff's

attorney, at plaintiff's request, wrote a letter to defendants dated June 18, 1968, which read, in part:

"We have advised Mr. Hillman that in our judgment, the lease in its present form is binding and conclusive on the parties. The rent for the months of May and June, 1968 is delinquent, aggregating $2,000 and in addition, a water bill of $200 is unpaid—likewise the obligation of the lessee and sub-lessee.

Our instructions are that if the delinquency is not paid before the close of business on Friday, June 21, we will proceed with legal action to enforce the claims of the lessor.

We hope, gentlemen, that you will take care of this matter and, of course, *we shall expect the rental hereafter to be paid promptly.*" (Emphasis added.)

The last sentence of this letter certainly informed defendants that plaintiff believed the option to renew had been exercised, and that defendants were to be liable under the renewed lease. There is no question that defendants understood the import of this letter since the response sent to plaintiff on June 20, 1968, by defendants' attorney stated:

"There has been paid to you, prior to the date of this letter, all rent due through and including the month of June, 1968. In addition, possession of the premises has heretofore been delivered to you and you have accepted possession of the premises.

Pixley & Ehlers has determined that the captioned Lease will expire on June 30, 1968 and from and after that date, it shall have no further liability to you.

We have been advised by your counsel, Mr. Lewis Shaffer, that you claim that the Lease was extended by the letter of December 28, 1967 for a period through June 30, 1973. Pixley & Ehlers considers such extension to be of no force and effect for the following reason, * * *."

■■ It seems to us that the clear disagreement concerning renewal, as expressed in this exchange of letters, constitutes sufficient evidence of defendants' intention not to pay rent after June 30, 1968, and any further notice or demand on plaintiff's part would have been a useless act. See *Rothbart v. Metropolitan Trust Co.*, 307 Ill.App. 271, 276, 30 N.E.2d 183, 186.

In conclusion, we find that the trial court erred in granting defendants' motion to dismiss and in entering judgment in defendants' favor, and that judgment is reversed. The cause is remanded to the trial court for further proceedings not inconsistent with this opinion, as though de-

fendants' motion to dismiss had been denied or waived. Ill. Rev. Stat. 1969, ch. 110, par. 64(5).

As defendants request it, and plaintiff does not object, we also direct the trial court to reinstate defendants' counterclaim, and answers thereto, which had been dismissed without prejudice after judgment was entered in defendants' favor.

Reversed and remanded with directions.

LORENZ, P. J., and DRUCKER, J., concur.