UNITED INVESTORS, INC., Plaintiff-Appellant, v. KOENIG & STREY, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—2662

Opinion filed February 26, 1988.

Alexander G. Poulakidas, of Chicago, for appellant.

Karl L. Felbinger, of Deerfield, for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff, United Investors, Inc., appeals from a judgment entered in favor of defendants, Koenig & Strey, Inc., and Melvin M. Kaplan Realty, Inc., in an action to recover the balance of a real estate commission allegedly due. United Investors contends that the judgment was erroneous.

On April 26, 1985, Dr. Alexander Constantaras entered into an exclusive written listing agreement with United Investors, a licensed real estate broker, for the sale of his Winnetka home at a price of $625,000. After an unsuccessful effort to sell the home, in the course of which it expended approximately $1,300, United Investors referred Dr. Constantaras to Koenig & Strey, another licensed real estate broker, which had more experience handling residential property on the North Shore.

On April 5, 1986, Dr. Constantaras entered into an exclusive written sales agreement with Koenig & Strey for the sale of his home. The agreement, prepared by Alexis Giannoulias, the president of United Investors, stated in part: "Koenig & Strey agrees to pay United Investors Inc. a referral fee of 20% of the listing at time of closing." Melvin M. Kaplan Realty, also a licensed real estate broker, thereafter procured a buyer for the property. The sale contract provided that the commission on the sale of the property was to be divided equally between the listing broker (Koenig & Strey) and the selling broker (Melvin M. Kaplan Realty).

The home was sold for $595,000. The total commission on the sale was $29,800. After closing, Koenig & Strey was paid a listing commission of $14,900, and Melvin M. Kaplan Realty was paid a sales commission of $14,900. Koenig & Strey then paid United Investors, the referring broker, $2,980, or 20% of the listing commission that Koenig & Strey had received from the seller for its services as a listing broker. United Investors claimed a commission due of $5,960, or 20% of the total commission paid by the seller, and when Koenig & Strey refused to pay, filed an action against Koenig & Strey and Melvin M. Kaplan Realty to recover the balance allegedly due on its referral fee.

The issue at trial was the proper interpretation of the provision in the sales agreement between the seller and Koenig & Strey whereby Koenig and Strey agreed to pay United Investors "a referral fee of 20% of the listing at time of closing."

Alexis Giannoulias, president of United Investors, testified that in March 1986 he asked Patricia Breen, a sales associate with Koenig & Strey, whether her company was interested in selling the property. According to Giannoulias, Breen, after consulting with her broker, told him that Koenig & Strey was interested but said, "the top we can pay is 20% of the entire exclusive listing agreement." Giannoulias did not explain what the phrase "entire exclusive listing agreement" meant to him and there is no evidence in the record that Breen was referring to the total sales commission. The sales agreement containing the referral fee provision was prepared by Giannoulias and was signed by Dr. Constantaras, the seller, and the manager and sales associate (Ms. Breen) from Koenig & Strey.

After the house was sold but before the closing, Giannoulias sent a letter to Ms. Breen in which he claimed a total commission of $5,960 for United Investors. Koenig & Strey did not respond to this letter and paid United Investors only $2,980 after the closing. When another letter demanding payment of the balance allegedly due went

unanswered, United Investors filed suit.

On cross-examination, Giannoulias testified that the broker who has the listing agreement is referred to as the listing agent, and his commission is considered the listing commission.

Esther Berman, a sales representative for Melvin M. Kaplan Realty, testified that under the custom and practice in the real estate business, the broker who has the listing is referred to as the listing broker, and, if another broker procures a buyer, that broker is referred to as the selling broker. The commission that the listing broker receives is known as the listing commission.

Patricia Breen could not recall the substance of her first conversation with Giannoulias regarding United Investors' commission for referring Dr. Constantaras to Koenig & Strey. She stated, however, that she had no authority to decide the amount of that commission and simply referred the matter to her manager. Ms. Breen did not believe that the subject of the commission was discussed when she later met with Giannoulias and Dr. Constantaras.

Upon reviewing the sales agreement which Giannoulias sent to her office in the spring of 1986, Ms. Breen understood that United Investors would receive as a referral fee 20% of whatever commission Koenig & Strey made on the sale of the house. She did not respond to the first letter from United Investors because she did not want to jeopardize the closing. On cross-examination, Ms. Breen stated that the term "listing" may refer to the price at which property is offered for sale but on redirect she explained that the word has a different meaning when it refers to a commission.

Melvin M. Kaplan Realty was not a party to the referral fee agreement between United Investors and Koenig & Strey and had no knowledge of that agreement.

At the conclusion of the trial, the court initially noted that there was an ambiguity in the referral fee provision of the sales agreement because of the use of the word "listing" and after considering the parol evidence introduced to explain the ambiguity, the court held that the most reasonable interpretation of the provision was that Koenig & Strey would pay United Investors a referral fee of 20% of the listing commission Koenig & Strey received, and not 20% of the total commission paid by the seller. This appeal followed.

■ A contract is ambiguous if it is reasonably susceptible to being understood in more than one sense or is obscure in meaning. (*Boise Cascade Home & Land Corp. v. Utilities, Inc.* (1984), 127 Ill. App. 3d 4, 9, 468 N.E.2d 442.) Whether an ambiguity exists is a question of law to be determined by the court. 127 Ill. App. 3d at 9.

Under the written sales agreement between Dr. Constantaras (the seller) and Koenig & Strey, which Alexis Giannoulias, the president of United Investors, prepared, Koenig & Strey agreed to pay United Investors "a referral fee of 20% of the listing at time of closing." Although the parties agree that they were referring to a percentage of a commission (and not a percentage of the listing price), it is not clear from the language itself whether United Investors was to receive 20% of the total sales commission or 20% of Koenig & Strey's listing commission.

United Investors concedes that the referral fee agreement is ambiguous and that parol evidence was properly admitted to ascertain the parties' intent. In reviewing that evidence, the trial court was guided, as we are here, by the principle that an ambiguous contract will be strictly construed against the party drafting it. *Peoples Bank Building, Inc. v. Pixley & Ehlers, Inc.* (1972), 9 Ill. App. 3d 364, 370, 292 N.E.2d 180.

Alexis Giannoulias testified that Patricia Breen, after consulting with her broker, offered to pay "20% of the entire exclusive listing agreement." As we have noted, however, there is no evidence in the record that Breen was referring to the total sales commission. Moreover, Ms. Breen stated that she did not believe that she had discussed the amount of the referral fee with Giannoulias after she had referred the matter to her manager. She stated further that when she reviewed the sales agreement Giannoulias prepared and sent to her office, she understood that United Investors would receive as a referral fee 20% of whatever commission Koenig & Strey made on the sale of the house. We take note that Ms. Breen's interpretation of the disputed language was supported by evidence of custom and usage.[1]

The parties agree that Koenig & Strey was the listing broker, not the selling broker, and that its commission as the listing broker, per its contract with the selling broker, was $14,900. The sales agreement with the seller provided that Koenig & Strey would pay United Investors "a referral fee of 20% of the *listing* at time of closing." (Emphasis added.)

■ Upon our review of the record, we agree with the trial court that the most reasonable interpretation of the provision in question was that Koenig & Strey would pay United Investors a referral fee of 20% of its *listing* commission, and not 20% of the *total* commission on the sale of the property. In reaching this conclusion we note that

---

[1]We do not consider the affidavit of the seller regarding his understanding of the parties' intent as his affidavit was never introduced into evidence.

the sales agreement was prepared by Alexis Giannoulias, president of United Investors, and had he intended that United Investors was to receive 20% of the total commission, "it would have been a simple matter," as the trial court observed, "to state that Koenig & Strey agrees to pay a referral fee of 20 percent of the total commission on the sale of this property at the time of closing." The agreement, however, did not so provide, and the trial court properly resolved the ambiguity against the drafter of the instrument.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.