(No. 22578.—
C. D. WHITE *et al.* Appellants, *vs.* WINFIELD N. MACQUEEN, Appellee.

*Opinion filed April 12, 1935.*

238

Cooke, Sullivan & Ricks, (Edwin Hedrick, and Robert C. Barker, of counsel,) for appellants.

J. S. Dudley, for appellee.

Mr. Justice Stone delivered the opinion of the court:

Appellants' bill, filed in the superior court of Cook county on May 21, 1932, seeking removal of appellee as trustee under a certain trust deed, praying for the appointment of a new trustee, for an accounting, and to enjoin appellee from taking further action by way of foreclosure of that trust deed, was dismissed by that court for want·

of equity. On appeal to the Appellate Court the decree of the superior court was affirmed, and the cause is here on leave to appeal.

The bill as amended alleges that the White Building Corporation, an Illinois corporation, on May 22, 1925, issued 845 mortgage bonds, aggregating $190,000, and as security for those bonds issued its trust deed to appellee as trustee, conveying an apartment building on Lake Park avenue, in Chicago. Of these bonds 168 matured May 22, 1931, and were paid and the balance were to fall due May 22, 1932. The bill alleges that appellee, Macqueen, accepted the office of trustee, and the bonds were issued through W. N. Macqueen & Co., a corporation, of which appellee was an officer, and sold by it to individuals; that on January 26, 1928, the corporation was dissolved, and appellee, Macqueen, thereafter continued its business in his individual capacity and for his own benefit; that appellants Hamel and C. D. White, as individuals, are owners of a portion of those bonds; that appellant White, as trustee, on April 23, 1932, became the legal owner of the title to the premises described in the trust deed and was such holder at the time of the filing of the bill herein. The bill alleges that from time to time the White Building Corporation deposited with the appellee, as trustee, money with which to pay the interest on bonds when due, but that appellee advised the bondholders that he had no money with which to pay interest, and delayed payment thereof with the intent and purpose of causing the bondholders to believe that the bonds were in default, in order that he might use the money for his own purposes. The bill also alleges that appellee did from time to time misuse and appropriate to his own purposes the funds deposited with him for the payment of the bonds by the makers thereof. It also charges that appellee devised a plan to profit from the bonds and securities and by the foreclosure of the trust deed by causing certain holders of the bonds to execute

a depositor's agreement and to deposit their bonds with him, as trustee for said depositing bondholders, under such agreement, for the purpose of foreclosing the trust deed, and that by the said deposit agreement appellee, as trustee therein named, was authorized to bid at foreclosure sale, to become the purchaser of and to hold the certificate of sale issued and to receive and hold any deed that might be issued thereon, for the equal and proportionate use and benefit of those bondholders depositing their bonds with him under the direction in said agreement to apply said bonds and interest coupons toward the payment of the purchase price in lieu of cash. It is alleged that the said depositors' agreement provided that the bondholders so depositing should bear and defray, as they were incurred, the costs and expenses in connection with the foreclosure, and authorized Macqueen, as their trustee, to sell and convey the premises at such prices and on such terms as to him should seem proper; that out of receipts of such sale or income from the premises, he, appellee, should be entitled to reimbursement for his costs and charges outlayed and expenses, including reasonable compensation for himself, his agents and attorneys, and that after such deductions were made the balance was to be divided among those who had so deposited their bonds with him. It is also alleged that this agreement which appellee made with depositing bondholders provided that those bondholders who did not deposit their bonds would not be entitled to any interest in the certificate of sale or deed or moneys arising therefrom or from the management of the property.

The bill charges that appellant the White Building Corporation, and C. D. White as trustee, attempted several times to obtain the coöperation and assistance of appellee in obtaining an extension of time for the payment of the principal on the bonds due May 22, 1932; that he advised them that he would coöperate in obtaining such extension only upon condition that he be paid not less than $20,000

to take care of bondholders who did not care to consent to the extension and to pay the commission for procuring the extension. The bill also alleges that five-sixths of the total interest due May 22, 1932, had been paid to appellee as trustee under the trust deed, and that he, in pursuance of his plan to obtain control of the bonds for his own personal benefit, notified the bondholders that he would not send their interest to them until they deposited their bonds and coupons with him under the proposed deposit agreement. It is alleged on information and belief that appellee told some of the bondholders that he did not intend to pay the interest but intended to retain the same and apply it in payment of trustee's fees and expenses, and that by reason of that statement appellant White, as trustee, had withheld payment of the balance of interest due May 22, 1932, and tenders the same in court, to be paid by the direction of the court.

It is also alleged that appellants have been informed that appellee represented to various bondholders that he intended to file foreclosure proceedings as trustee and bid in the property for himself, to the exclusion of rights of bondholders who did not deposit their bonds with him. The bill charges on information and belief that appellee intends and hopes by means of such foreclosure to carry out and consummate his plan to obtain, own and control the property for his own use and benefit and to protect the bonds owned and controlled by him, disregarding the interest of other bondholders and entirely disregarding the interest of appellants as mortgagor and as bondholders, and that, unless relief is granted, the bondholders who have not deposited their bonds with him will be completely excluded and will suffer irreparable injury. The bill also alleges that by reason of his wrongful acts appellee is unfit and unqualified to act as trustee under the trust deed or to receive the moneys for distribution to the bondholders, and that the complainants fear that he will not protect the

interest of all bondholders equitably and ratably. It is also there stated that the trust deed provides that the Foreman Trust and Savings Bank be appointed successor to appellee in case of the latter's removal, disqualification or resignation as trustee, and it is stated on information and belief that the Foreman Trust and Savings Bank is unwilling and unable to accept the position as such successor under the trust deed, but that the trust deed also provides, in such event, for the appointment of the Northern Trust Company as successor trustee under the trust deed.

Appellee filed a general and special demurrer, alleging want of necessary parties, that the bill is multifarious, vague and uncertain and does not state ground for the intervention of a court of equity, and that it is demurrable for other reasons appearing on the face of the bill.

Appellee, in defense of the action of the superior court, urges here that the bill does not show sufficient ground for removal of the trustee; that it discloses want of necessary parties; that it is multifarious, and that the provisions of the trust deed concerning the removal of the trustee are full, adequate and binding upon all parties and the court. Appellants, on the other hand, urge that none of these frailties appear in the bill.

The questions arising on this record do not involve the right of bondholders to enter into an agreement for the deposit of their bonds with a trustee appointed by themselves for purposes such as are set out in the bondholders' agreement here referred to, but do involve the right of a trustee under a trust deed to act in the manner charged in the bill regarding the trust property, the mortgagor and bondholders. It may be stated at the outset that a court of equity will not interfere with an agreement of depositing bondholders as to what shall be done with their bonds if the agreement is otherwise legal and made with one who may properly enter into it, since they, alone, are concerned in such an agreement. The questions here involve the right

of the trustee under a trust deed to so act in relation to such an agreement as a party thereto as to violate his obligations as trustee under such trust deed. It is claimed by appellants that the facts set out in the bill show a breach of trust on the part of appellee justifying his removal as trustee under the trust deed.

We will consider first the question whether there is a lack of necessary parties. The general rule is that all persons interested in the subject matter of a suit should be made parties thereto, and that when foreclosure of a mortgage or trust deed is sought, the *cestuis que trustent,* as well as the trustee, should be made parties. To this rule there are, however, two well established exceptions. The first is where the absent parties are properly represented. In such a case it is sufficient to make such representatives parties to the suit. A trustee under a trust deed represents the interest of the bondholders, and when he is made party to a suit affecting such interest they are as much bound by the decree rendered in the suit as if they were individually made parties thereto, for the reason that their interests receive actual and efficient protection. (*Hale* v. *Hale,* 146 Ill. 227; Jones on Corporate Bonds and Mortgages, sec. 398.) Another exception to the general rule arises where the beneficiaries are very numerous, so that the delay and expense of bringing them in becomes oppressive and burdensome. In such case they will not be deemed necessary parties where the trustee representing them is made party. Story in his Equity Pleading, section 150, refers to the statement of Lord Redesdale, that where, by reason of the number of persons represented by a trustee, there is great impracticability in making such persons parties, that fact itself constitutes sufficient ground for dispensing with them as such. This exception to the general rule is approved by this court in *Chicago Land Co.* v. *Peck,* 112 Ill. 408. In *VanVechten* v. *Terry,* 2 Johns. Ch. 197, Chancellor Kent, in overruling a demurrer based

on the ground that *cestuis que trustent,* 250 in number, were not made parties, said: "The trustees are sufficient for the purpose of this bill, which is for a sale of the pledge. It would be intolerably oppressive and burdensome to bring in all the *cestuis que trust.* The delay and expense of such proceeding would be a reflection on the justice of the court. This is one of those cases in which the general rule can not and need not be enforced, for the trustees sufficiently represent all the interests concerned. They were selected by the association for that purpose and we need not look beyond them." (See, also, *St. Louis and Peoria Railroad Co.* v. *Kerr,* 153 Ill. 182.) We are of the opinion that this case falls within the exception to the general rule of equity pleading. Here appellants Hamel and White filed a bill in their own behalf and on behalf of all other bondholders who might join the suit, while appellee, Macqueen, as trustee under the trust deed, represents the bondholders not parties complainant and is a party individually as an owner of bonds. It will be thus seen that the interests of the bondholders not filing deposit agreements were represented by appellants and those who did sign such agreement were represented by appellee. Appellants Hamel, the White Building Corporation, and White as owner of bonds and owner of the equity of redemption as trustee, were parties complainant. Thus all necessary parties are either personally or by representation before the court. We are of the opinion, therefore, that this ground of the demurrer cannot be sustained.

Is the bill multifarious? To lay down any definition, universally applicable, of multifariousness, or to say what constitutes multifariousness as an abstract proposition, is not possible. There is no settled and inflexible rule by which to decide whether a pleading is multifarious. The question is one to be determined largely by the pleading in each particular case. (*First Nat. Bank* v. *Starkey,* 268 Ill. 22; Story's Eq. Pl. (10th ed.) sec. 530; 14 Ency. of

Pl. & Pr. 195.) It has been frequently held that the objection of multifariousness usually raises merely a question of convenience in conducting the suit and simply calls for the decision of the court upon the question whether, in its discretion, the various causes set forth in the bill should ·be tried in a single suit or should be divided and tried in two or more suits, or whether a defendant who is a necessary party in respect of some matters covered by the bill is so connected with other matters involved as to make him a proper party in respect of them. *Graves* v. *Corbin,* 132 .U. S. 571; *North American Ins. Co.* v. *Yates,* 214 Ill. 272; Story's Eq. Pl. (19th ed.) sec. 271, note (*a*).

Notwithstanding the impossibility of a general rule, applicable in all cases, as to what constitutes multifariousness, there are certain principles and tests by which such defect may be discovered. Story, in his Equity Pleadings, (10th ed.) sec. 271, states that multifariousness exists in an improper joining in one bill of distinct and independent matters, thereby confounding them. This is the test generally applied. Another test which is frequently applied is whether the causes of action in the bill require separate briefs or decrees and separate defenses, or whether the bill, fairly construed, shows a single object and seeks to enforce one common right. It may be that plaintiffs and defendants are parties to the whole of the transaction which forms the subject matter of the suit yet those transactions be so dissimilar that the court will not allow them to be joined in one action but will require distinct records. As generally and familiarly understood, the term "multifariousness," as applied to a bill in equity, exists where a party is able to say that he is brought, as defendant, upon a record with a large portion of which he has no connection whatever. (*First Nat. Bank* v. *Starkey, supra;* 1 Daniell's Ch. Pr. (6th Am. ed.) sec. 336.) A bill which joins different claims against different defendants is multifarious, for a claim against two or more defendants cannot be

properly united with a separate claim against one, only, and distinct claims against two or more defendants on individual accounts cannot be thus joined. (*Keith* v. *Keith,* 143 Mass. 262; *Brewer* v. *Norcross,* 17 N. J. Eq. 219; *Swift* v. *Eckford,* 6 Paige's Ch. 22; 1 Beach on Modern Eq. Pr. sec. 121.) A bill containing a claim against a defendant in his individual capacity and another claim against him as an heir for the debt of his ancestor may be objected to as multifarious. Story's Eq. Pl. (10th ed.) sec. 276.

A bill is not subject to the charge of multifariousness when the joinder therein of distinct matters prevents a needless multiplicity of suits and neither inconveniences the defendants nor causes additional expense, provided the grounds are not entirely distinct and disconnected but arise out of one transaction or series of transactions forming one course of dealing, all tending to one end, so that one connected story can be told of the whole. (*Miller* v. *Hale,* 308 Ill. 275.) It is a favorite object of equity courts to do full and complete justice by avoiding a multiplicity of suits, though to do so requires investigation of several matters ·and relief consisting of different elements. A court of equity will in a single suit investigate and determine questions incidental to the determination of the main controversy and will grant all relief incidental to the accomplishment of the main object of the bill. Though a bill embraces more than one subject, it will be sustained if such is necessary or highly conducive to the administration of justice. (*Anderson* v. *Anderson,* 293 Ill. 565; *King* v. *Rice,* 285 id. 123.) In *Abbott* v. *Loving,* 303 Ill. 154, it was held that where causes set forth in the bill may conveniently be tried in a single suit so that multiplicity of suits may be avoided, and where the relief sought in each cause is of the same general character, with no resulting unreasonable hardship to defendants, the bill is not multifarious. Tested by these rules the bill before us is not open to the objection that it is multifarious. It seeks re-

moval of appellee as trustee under the trust deed. All other relief sought is incident thereto. The bill does not seek to prevent the foreclosure of the trust deed but seeks to restrain appellee from foreclosing it.

We come, then, to the question of the sufficiency of the charges in the bill. It is argued in support of the demurrer and the decree sustaining it, that the trust deed adequately provides for the removal of a trustee in a proper case, and that the terms of the trust deed in this regard are binding on appellants and likewise on the court. The trust deed by section 2 of article 12 provides that the holders of not less than two-thirds of the bonds may remove the trustee. This provision does not prevent his removal for cause by a court of equity, which has inherent supervisory jurisdiction over all trusteeships where questions affecting them are properly brought before it. The trust deed provides that if the trustee shall resign or be removed, a successor may be appointed by holders of a majority of the bonds outstanding. It would, indeed, be the announcement of a dangerous doctrine to hold that because a trust deed gave to two-thirds of the bondholders the right to remove a trustee a court of equity is powerless to remove a trustee who has proved faithless to his trust.

It is argued by counsel for appellee that a trustee in a trust deed does not act in such capacity for all parties, and that in this case he is not by the trust deed made trustee as to any of those matters complained of. The rule recognized in this State is, that a trustee under a trust deed is the representative and trustee of both the parties to the instrument—the mortgagor as well as the mortgagee or bondholders—and that he must act fairly toward both parties to the instrument and not exclusively in the interest of either. He is required to act fairly to the debtor or those having derived title from the debtor and who have an interest in the property pledged. His selection is by both parties to the trust deed agreement. (*Gray* v. *Robert-*

*son,* 174 Ill. 242; *Williamson* v. *Stone,* 128 id. 129; *Ventres* v. *Cobb,* 105 id. 33; *Cassidy* v. *Cook,* 99 id. 385; *Meacham* v. *Steele,* 93 id. 135.) Counsel for appellee argues, however, that a trustee may not be removed for every violation of duty, or even breach of trust, if the fund is not in danger of being lost. As pointed out in *Williamson* v. *Stone, supra,* however, a trustee will not be allowed to place himself in such a position that he may not perform his duty to the mortgagor and owner of the equity of redemption, as well as to the bondholders, to see that the property brings the greatest amount possible.

. The power of a court of equity to remove a trustee, in a proper case, for breaches of trust, misconduct or disregard of his fiduciary duties cannot be doubted. Such power grows out of the inherent power of that court over trustees. It may exact from him the utmost fidelity and good faith and will not permit him to deal with the subject matter of the trust for his own benefit./ (*Ames* v. *Witbeck,* 179 Ill. 458; *Hale* v. *Nashua and Lowell Railroad Co.* 60 N. H. 333; 1 Perry on Trusts, secs. 427, 428; 3 Pomeroy's Eq. Jur. secs. 1075-1077.) Such power, it is true, must be exercised with care. There must be such misconduct as to show a want of capacity or of fidelity. (1 Perry on Trusts, sec. 276; 1 Quindry on Bonds and Bondholders, sec. 250, p. 328.) And where the trustee is lawfully discharging his duty, courts should be slow to interfere. A court of equity always has the power to correct misconduct of a trustee and to remove him for direct violation of his fiduciary responsibility.

This brings us to a consideration of the averments of facts of the bill which are admitted by the demurrer. The bill charges that appellee, though trustee under the trust deed, solicited and accepted deposits of bonds from bondholders under an agreement with them and for the purpose of representing only those bondholders who deposited their bonds with him in the foreclosure suit and for purchasing

the property at foreclosure sale and holding and selling it for the benefit only of the depositing bondholders. It is also charged that appellee from time to time used and misused for his own purposes trust funds deposited with·him by the mortgagor for payment to the bondholders; that he entered into a plan and device to use his position as trustee under the trust deed and his control of the corporation which underwrote and sold the bonds, to obtain control of the property for his own use and benefit, to the detriment of the bondholders, the mortgagor and the owner of the equity. It also charges that he formulated a plan to personally profit from the foreclosure, that he solicited and acquired bonds in exchange for other securities of less value by means of fraudulent representations concerning the value of the bonds here involved, and that he used his office as trustee to influence such transaction for his personal profit. We do not have before us the question of the truth or untruth of these charges, and while certain conclusions have been drawn by appellants in their bill which are not admitted by demurrer, the allegations of fact are admitted for the purpose of testing the question whether the bill states a cause of action. Whether proof will or can be made substantiating these charges is not before us. We are of the opinion that the allegations of the bill charge acts on the part of appellee which a trustee will not be permitted to do, and which, if proved, constitute a breach of trust on the part of appellee as trustee under the trust deed. Those charges require his answer to the bill. The superior court therefore erred in sustaining the demurrer and dismissing the bill and the Appellate Court erred in affirming that decree.

The judgment of the Appellate Court and the decree of the superior court are reversed and the cause is remanded to the superior court, with directions to overrule the demurrer. *Reversed and remanded, with directions.*