Charles B. Campbell, Jr. and Pleasant Whipple Campbell, Appellants, v. Charles H. Albers, Receiver of Citizens State Bank of Manteno, et al., Appellees.

Fred H. LaRocque et al., Appellees, v. Mary Wood Campbell, Individually and as Executrix of Last Will and Testament of Winfield S. Campbell, Deceased, et al, Charles B. Campbell, Jr. and Pleasant Whipple Campbell, Appellants.

Gen. No. 9,691.

154

Opin-
ion filed January 14, 1942. Rehearing denied February 27, 1942. Opinion modified March 26, 1942.

W. H. DYER and EBEN B. GOWER, both of Kankakee, for appellants.

FRANK J. BURNS, of Kankakee, for certain appellee.

CLAUDE M. GRANGER, of Kankakee, for certain other appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

The questions in this case arise out of dealings by the trustees of a testamentary trust with funds of the trust estate. On June 23, 1938, appellants, who are the beneficiaries of the trust, brought suit in the circuit court of Kankakee county against the trustees, the legal representatives, legatees and devisees of the deceased sureties on their bond, the legal representative, legatees and devisees of a deceased legatee of one of such sureties, and the receiver of the Citizens' State Bank of Manteno, for an accounting, removal of the trustees, payment of all moneys received by them, with interest, and the appointment of new trustees.

Upon appellants' motion and over objection of appellees, the suit was consolidated with another proceeding in the same court wherein appellants were parties defendant and the trustees were appointed as such in July 1923, under their bill of complaint for that purpose. The trustees thereafter made five *ex parte* reports of their acts and doings, the last of which was filed six days before appellants filed their suit. The cause is presented here by an appeal of the beneficiaries of the trust from certain portions of the decree and cross-appeals by the other parties. The transactions involved are an investment by the trustees in three $1,000 first mortgage bonds of the Hotel Sherman Company, and moneys deposited in the bank named.

Winfield S. Campbell, grandfather of appellants, was formerly a resident of this State. He was one of the founders and was a director of the Citizens' State Bank of Manteno until he became a resident of the State of Idaho, where he died testate on November 17, 1922. His last will was admitted to probate in that State. The will gave to appellees Fred H. La-Rocque and Frank M. Wright, of Manteno, Illinois, in trust for the benefit of appellants, the testator's 10 shares of stock in the bank, with all dividends and increments therefrom, the dividends or increments to be kept until January 1, 1939; also one half the residue of the estate, "to have, to loan and care for" during the same period. The corpus of the trust, and the dividends, increments or interest were to be divided equally between the beneficiaries on January 1, 1939, less reasonable compensation for services of the trustees. The trustees named were respectively the cashier and the president of the bank until it was closed by the auditor of public accounts on December 22, 1931.

The decree by which the trustees were appointed found the bank stock was worth $4,000, and the remainder of the trust estate was about $10,000. They gave bond in the amount of $20,000 with Leon

Euziere and Henry LaRocque as sureties. The property received by the trustees from the Campbell estate consisted of the bank stock and $8,650 cash. Each of the sureties and one of the legatees of Euziere died before appellants' suit was brought. No claim by any of the parties hereto was ever filed against any of their estates, which remain unsettled and undistributed.

When the bank closed, a claim by the trustees for $9,401.15, as cash on deposit, was filed and allowed as a general claim. The receiver made periodical payments of 62½ per cent. The decree appealed from, entered January 27, 1941, finds the allowance as a general claim was through error, and that the claim should have been allowed as preferred. It orders the receiver to pay appellants, in the course of administration, the unpaid balance of $3,525.49 as a preferred claim, without interest. The decree finds the Hotel Sherman Company bonds were purchased by the Citizens' State Bank of Manteno from the First National Bank of Chicago, and that the dealings of the trustees were with the Manteno bank. It further finds that as the period of the trust had expired, there was no occasion to appoint new trustees. It overrules appellants' objections to and approves the five current reports of the trustees; orders them to turn over to appellants, as shown on hand by the last two current reports, $5,268.75 in United States Savings Bonds; $2,250 in new bonds and $750 in stock of the New Sherman Hotel Company, acquired by the trustees through a receivership and reorganization of the hotel company under section 77B of the Bankruptcy Act, in place of the three $1,000 bonds purchased by them; and $716.88 cash, being $705.08 paid by the receiver since the date of the last trustees' report and $11.80 then on hand. It further finds that as no claim was filed against the estate of either surety on the trustees' bond, the legal

representative, "heirs" and devisees are under no liability and dismisses the suit as to them. The decree further orders that neither the receiver nor the trustees be required to pay any interest on any trust funds held by them except interest actually collected, as shown by the trustees' reports and included in the current value of the United States bonds; and that the trustees be paid such fees for themselves and their attorneys as may be allowed by the court upon the filing of their final report, to be filed within 30 days.

The beneficiaries of the trust claim by their assignments of error that the court erred in refusing to order the defendants to pay all the moneys of the trust, including the amount expended in the purchase of the Hotel Sherman Company bonds, and all moneys deposited in the bank, with five per cent compound interest, except as to two real estate loans made and collected; in ordering the trustees to turn over and appellants to receive the stock and bonds in the New Hotel Sherman Company; in overruling the objections to the trustees' reports; in dismissing the suit as to the legal representatives, legatees and devisees of the deceased sureties; in ordering that the trustees be paid compensation as provided in the decree; and in refusing to remove them as trustees.

The receiver's cross-appeal is from that portion of the decree allowing the $3,525.49 as a preferred claim. The cross errors urged by the other defendants are based upon the court's refusal to dismiss the complaint for an alleged want of jurisdiction; in striking portions of their answer alleging estoppel by claiming benefits of the alleged breaches of trust; and the findings as to the purchase of the Hotel Sherman Company bonds.

As to the alleged want of jurisdiction, the claim is that the trustees' bond was void and the basis of no legal liability; and that the trial court had no juris-

diction in either of the consolidated cases. This claim is based upon a statute of the State of Idaho (Civil Code, ch. 283, sec. 7721) which provides:

"Where any trust has been created by or under any will to continue after distribution the Probate Court shall not lose its jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trust, and any trustee created by any will, or appointed to execute any trust created by any will, may from time to time pending the execution of his trust, or may at the determination thereof render and pray for the settlement of his accounts as such trustee before the Probate Court in which the will was probated, and in the manner provided for the settlement of the accounts of executors and administrators."

In *Estate of Beckwith v. Cooper*, 258 Ill. App. 411, cited by appellees, the will of an Iowa testator appointed trustees residing in that State, with a requirement they should report annually to the probate court of Henry county, Iowa. The trustees qualified in that court, and later moved to Illinois, where one of them died. This court held the circuit court of Kane County, Illinois, had no authority to appoint his successor. That case obviously has no application here.

The force and obligation which the laws of one country have in another depends solely on the laws of the latter. The several States, except as restrained and limited by the Federal constitution, possess and exercise the authority of independent States, and laws are without force beyond the jurisdiction of the State which enacted them, and have no extraterritorial effect except by comity. (*Huntington v. Attrill*, 146 U. S. 657; *Paul v. Virginia*, 8 Wall. (75 U. S.) 168.) How far foreign laws should be enforced under the doctrine of comity depends upon whether any wrong will be done a citizen of the domestic State, whether the policies of its laws will be contravened or impaired, or

whether the court can do complete justice to those affected by the decree. (*Edwards v. Schillinger*, 245 Ill. 231.) The trustees in this case were not appointed by the probate court in the State of Idaho, and it could not obtain jurisdiction of them except by their voluntary appearance. How appellants could maintain an action there is not suggested.

In *Farmers' Loan & Trust Co. v. Ferris*, 67 App. Div. 1, 73 N. Y. S. 475, under a situation analogous to this case, the court said:

"The Courts of South Carolina cannot obtain jurisdiction over the plaintiff (the trustee) except by voluntary appearance. The trust fund and the administration being here, the trustee being a corporation of this state, and the court having jurisdiction of the parties, it may properly exercise jurisdiction, and direct how the fund shall be distributed; and its decree, when complied with by the plaintiff, will relieve it from liability." A similar holding as to jurisdiction in a suit to recover trust property or compel an accounting by foreign executors and trustees as to assets with a situs in the State, appears in *Squire v. Houghton*, 131 Misc. 129, 226 N. Y. S. 162.

*In re Will of Risher*, 227 Wis. 104, 277 N. W. 160, 115 A. L. R. 790, the will of a Wisconsin testator appointed a trust company of Pittsburgh, Pennsylvania, trustee under the will. The question was as to which State had jurisdiction of the trust. The court held the intention of the testator was the supreme test; that the title and right of the trustee comes exclusively from the will, not from proceedings on the will taken in the Wisconsin court, neither probate of the will nor letters of trusteeship being the foundation, but the will itself; citing *In re Ripley*, 101 Misc. 465, 167 N. Y. S. 162. The opinion quotes Restatement, Conflict of Laws, sec. 298, comment C:

"If the testator appoints as trustee a trust company of another state, presumptively his intention is that

the trust should be administered in the latter state. The trust will, therefore, be administered according to the law of the latter state.''

It further quotes section 299 of the Restatement: ''The administration of a trust of movables is supervised by the courts of that state only in which the administration of the trust is located.'' The court said: ''The location of the administration of a trust, or the situs of a trust, means the place of the performance of the active duties of the trustee.'' A contention that the Wisconsin court had jurisdiction of the trust was denied. In our opinion the doctrine of the above-mentioned cases is sound. Our conclusion is that the circuit court of Kankakee county had jurisdiction in both cases. When a defendant is liable, in consequence of a contract or as a trustee or as a holder of a legal title acquired by a species of mala fides practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found. (*Bevans v. Murray,* 251 Ill. 603.) In the early case of *Enos v. Hunter,* 4 Gilm. (9 Ill.) 211, the court said:

''Where the relief sought could be effected by acting directly upon the person of the defendant, the court of chancery has never hesitated to entertain the bill where the defendant is found within its jurisdiction, whether the subject matter of the controversy be within its control or not.'' It is obvious that complete justice can be done in this proceeding and there is no occasion for applying the doctrine of comity. The contention as to want of jurisdiction is without merit.

As to the liability of the legal representatives, legatees and devisees under the trustees' bond, the question is settled adversely to the contention of appellees by the decision in *Union Trust Co. v. Shoemaker,* 258 Ill. 564. In that case it is held that section 67 of the Administration Act, in force during the trust period here involved, which provided for filing claims against estates of decedents within one year after the issuance

of letters, had no application to claims dependent upon a contingency which may or may not ripen into a liability; that the limitation under section 70 of the Administration Act is not a general limitation upon all remedies against the property of deceased persons; that such limitation, as reduced to one year by the statute of 1903, does not apply to actions against heirs, devisees or legatees to subject property of the estate received by them to the payment of contingent liabilities of the deceased; and that such actions, if otherwise maintainable, are subject only to the general statute of limitations. Manifestly, the liability on the trustee's bond has not expired by the general statute of limitations, and laches cannot be imputed to appellants while the bond is in force. (*Trustees of Danvers Literary & Library Ass'n v. Skaggs,* 280 Ill. App. 125; *Lynn v. Worthington,* 266 Ill. 414.) Appellants are not estopped by the court's approval of the *ex parte* reports of the trustees. (*People v. Canton Nat. Bank,* 288 Ill. App. 418.) The holdings in the *Shoemaker* case are approved in *Chicago Title & Trust Co. v. Fine Arts Building,* 288 Ill. 142, and *Sanders v. Merchants State Bank of Centralia,* 349 Ill. 547. This suit is not a claim against the estates of the deceased sureties or their legal representatives to participate as a claimant against the estates in the distribution of assets thereof, but its object is to reach the shares of the distributees. The property of each of the sureties in this case is still in process of administration, undistributed, and we observe no reason why it cannot be reached through this proceeding in equity for any liability of the sureties for a breach of the bond, which liability remains contingent until such a breach is established. The legal representatives and the distributees are necessary parties. The doctrine of equity contemplates complete relief and does not require appellants to wait until distribution has been made and then attempt to recover from the distributees. It is to be observed that

this is not a proceeding under sections 10, 11 or 12 of the statute of frauds and perjuries, to reach real estate in the hands of devisees. Those sections have no application here and they do not limit the liability of personal representatives, heirs or legatees in a suit like this. (*Albers v. Redeker,* 295 Ill. App. 614 (Abst.).) The court erred in dismissing the suit as to the defendants above mentioned.

There is no virtue in the claim that appellants, by their complaint claimed the interest paid by the bank on deposits which was included in the $9,401.15 on deposit at the time the bank closed and are thereby estopped from objecting to the deposits, or that they have changed their position in this court by repudiating such interest. The complaint does not bear any such interpretation. After alleging illegal and unlawful deposits in the bank and unauthorized investment in the hotel bonds, it alleges liability for the trust funds so misused and not invested as provided by the will, with lawful interest from the date or dates of such misuse. The prayer of the complaint is for an accounting and payment of the amounts found due, and upon failure of the other defendants to bring the amount into court that the receiver be ordered to pay the balance remaining due of the sum of $9,401.15, and the amount invested in the hotel bonds, "plus legal interest on all of said funds from the dates that said moneys were deposited in said bank." Under the antecedent allegations, the words "the balance remaining due of the sum of $9,401.15 were plainly meant as the balance of the deposits. This is borne out by the language of the subsequent prayer for interest. The complaint does not adopt or ratify the deposits or seek to recover the specific interest paid by the bank, but the claim is for the amounts deposited and the amount invested in the hotel bonds, with interest, on account of liability under the trust during the period of such

deposits. Whether the defendants use the interest received from the bank in partial discharge of their liability is at their option, but the complaint does not ask that they be required to do so.

The three Hotel Sherman Company bonds were part of an issue of $8,750,000 first mortgage serial bonds, dated July 1, 1926, equally secured by the real estate, leaseholds and buildings of three hotel properties in the city of Chicago. The bonds in controversy were due January 1, 1938. Mr. Wright testified he had very little to do with the trust and left it to Mr. LaRocque, feeling he was competent and having great confidence in his judgment. While in Chicago on April 23, 1930, Mr. LaRocque purchased the three bonds from the First National Bank of Chicago on the account of the Citizens' State Bank of Manteno, at $98.46 per $100 face value and accrued interest, less ¼ of one per cent. The bonds were left for safe-keeping with the First National Bank, which issued a receipt therefor to the Citizens' State Bank of Manteno. On April 25th the account of the trustees in the latter bank was debited with $3,005.13 for the purchase of the bonds by the trustees. This was at the same price paid for the bonds by the Citizens' State Bank except that it included interest for the two intervening days and the discount of ¼ of 1 per cent, or $7.70 more than the bank paid for them. The bonds did not leave the Chicago bank, but were retained by it as the property of the Citizens' State Bank until they were sent to the receiver about March 6, 1932, who delivered them to the trustees. The bond record cards of the Citizens' State Bank for each of the three bonds show at the bottom: "Sold to W. C. Campbell Estate 4/25/30. Delivered Mar. 6–32 to Fred H. LaRocque, Trustee." It was stipulated that no known sales of Hotel Sherman Company bonds on the open market were made on the Chicago or New York stock exchanges on April 24, 1930 or March 6, 1932; and that

on February 2, 1932, the price bid was $28 and on March 5, 1932, it was $29.

When the bonds were purchased from the First National Bank on April 23, 1930, the taxes on the hotel properties were in default for the years 1928 and 1929. On May 9, 1932, the National Cash Register Company filed a bill in equity in the United States District Court for the appointment of a receiver for the hotel company and a receiver was appointed upon the bill confessed. On October 14, 1932, the trustee under the deed of trust filed a foreclosure suit in the same court for default in failure to deposit instalments of principal and interest. The result of these proceedings was a reorganization of the hotel company under section 77B of the Bankruptcy Act, through which the trustees received the new bonds and stock already mentioned. The taxes on the properties for 1928 and 1929 were assessed at $540,758.99. Of this amount $158,216.61 was still unpaid when the receiver was appointed by the United States District Court. The passage of the Act of June 27, 1930 (Laws 1930, First Spec. Sess., p. 61) providing that taxes for 1928 and 1929 should respectively be deemed delinquent on July 10, 1930, and April 1, 1931, did not change the fact that when the bonds were purchased the taxes were delinquent under the law then in force. It is an evidence, however, of the conditions which then prevailed.

LaRocque testified he made no inquiry about taxes when he bought the bonds; that he told an employee of the First National Bank he wanted a safe investment of $3,000 for a trust estate, and the employee recommended Marshall Field and Company or Hotel Sherman; and that he bought the bonds on that recommendation. So far as the record shows, he made no investigation or any independent inquiry about the bonds, but purchased them from the party who had them to sell without any effort to learn anything about them. The fact that he told the employee of the bank

with which he dealt in making the purchase that he wanted an investment for a trust estate does not change the character of the transaction as carried out. The bonds were purchased in the name of the Citizens' State Bank and were sold two days after ward to the trustees at a profit. The claim that the bank acted merely as an agent of the trustees is untenable.

While it is stipulated that the underlying security for the bonds had been appraised at something over $18,000,000 at the date of the bond issue, that fact is of no avail to the defendants in this proceeding. We take judicial notice of the inflated values of that period, and the corresponding deflated values in the widespread depression starting in the autumn of 1929; and so far as the record shows the trustees did not rely upon the appraisement or even know of it. The taxes in default when the bonds were purchased, the suits in the United States District Court, in a little more than two years after the purchase of the bonds, with the resulting reorganization in bankruptcy, show the bonds were not a safe investment, and the facts indicate that a proper investigation would have so disclosed. Section 1 of the act concerning the powers of trustees (Ill. Rev. Stat. 1941, ch. 148, par. 32 [Jones Ill. Stats. Ann. 135.05]) which provides that investments of trust funds by trustees may be in first mortgage bonds of any corporation upon which no default in payment of interest shall have occurred for a period of five years, does not purport to sanction or permit such an investment where the bonds are otherwise unsafe, or to excuse the trustees from making a proper investigation as to the safety and propriety of such an investment. The statute was designed to protect the beneficiary and not to shield the trustee from an improper investment through a failure to perform the duties of his trust. The provision as to no default in interest was manifestly meant as a limitation on the power to in-

vest, and not as exonerating trustees from the full performance of their duties. Liability attaches in the case of such neglect. (*In re Estate of Sanders,* 304 Ill. App. 57.) Trustees may not purchase, with trust funds, securities from an institution of which they are the managing officers. In such case the trustees and the bank are each liable. (*Kinney v. Lindgren,* 373 Ill. 415; *Bennett v. Weber,* 323 Ill. 283; *In re Estate of Sargent,* 276 Ill. App. 312; *Michoud v. Girod,* 4 How. (45 U. S.) 503.)

The other transaction relates to deposits in the Citizens' State Bank. All the moneys of the trust were deposited in a savings account at interest. It was all kept in that account until the bank closed, except the amounts used in the purchase of the hotel bonds; $3,750 withdrawn on November 29, 1924 for the purchase from the bank of the Charles Weber 6 per cent real estate mortgage, replaced in the account on August 2, 1928 when the mortgage was paid; $1,000 for purchase of the J. T. Smith mortgage on July 2, 1925, and likewise replaced on January 29, 1927; and a $900 Liberty Bond purchased November 3, 1932, and sold November 11, 1935.

LaRocque testified that when land values in 1928, 1929 and 1930 were slipping, the assets of the bank were slipping, too; and that when the bank closed, its financial standing had decreased, due to declining land values; that such was not entirely the cause of the bank closing, but the reason was money could not be gotten anywhere. Under such a state of facts there was no excuse for keeping the money of the trust in the bank. (*People v. Canton Nat. Bank, supra.*) If there was no other available investment, it could have been invested in bonds of the United States, which were safe and permitted by the statute. Our conclusion is that the bank, of which the trustees were the managing officers, sorely needed the money of the trust, and they elected to take the risk of an investment

not permitted by law to bolster up the failing condition of the bank for their own benefit. A trustee is not permitted to place himself in a position where it will be difficult for him to be honest and faithful to his trust. (*Bennett v. Weber, supra; In re Estate of Sargent, supra.*)

The contention of the receiver that the claim allowed as a general claim cannot be changed after the term to a preferred claim in this proceeding ignores the fact that this is not a suit by the parties who filed the claim, but is by the beneficiaries of a trust who were not parties to the other proceeding. While in general a trustee represents his *cestui que trust* in actions to which he is a party, it is manifest that where he and the other party to the suit are joint tort-feasors, no settlement or judgment in the suit, to which the *cestui que trust* is not a party, could be binding upon the latter. The bank, as well as the trustees, is charged with knowledge of the illegality of the deposits, and thereby became a trustee *ex maleficio*. The receiver stands in the shoes of the bank and is liable for the money so misused, as a preferred claim. (*Woodhouse v. Crandall,* 197 Ill. 104; *People v. Dahlgren State Bank,* 264 Ill. App. 513.)

In *United Mut. Life Ins. Co. v. Sholtz,* 121 Fla. 260, 163 So. 690, the court said: ''Equity has general jurisdiction over trusts, statutory or otherwise, and if it be true that a statutory trustee has breached his duties as trustee by undertaking to consent to a judgment against him that is unlawfully prejudicial to other cestui que trustents, a court of equity may take jurisdiction for the purpose of specifically compelling both the trustee and those who have benefited by the trustee's breach of trust to restore the status quo and thereby undo the wrong comprehended in the result of the legal proceeding complained of.'' (Citing 26 R. C. L. 1362; note 30 L. R. A. 240.) That holding is applicable here. Cases cited by the receiver in which

the same party who filed a claim attempted to have the judgment changed after the term at which it was entered are not in point. The chancellor could correctly order the receiver to pay the balance due on the deposits as a preferred claim.

The net result is that the trustees, the legal representatives, legatees and devisees of the sureties on their bond, and the receiver, are liable for the full amount of the trust funds, with interest at the legal rate from the respective dates of their receipt, except that the liability for interest on the Weber and the Smith loans, and on the Liberty Bonds, and other bonds of the United States, should be the actual amounts received in those instances. The bonds purchased by the trustees in violation of the law became the property of the trustees personally. The money used for the purchase must be accounted for. (*In re Estate of Sanders, supra; Kinney v. Lindgren, supra; Bennett v. Weber, supra.*) The chancellor erred in decreeing that the new bonds and stock in the reorganized company should be turned over to appellants. Under the circumstances shown by the record the trustees are not entitled to an allowance of fees.

The decree, in all respects, except the finding that the trustees purchased the hotel company bonds from the Citizens' State Bank, is reversed, and the cause is remanded with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded with directions.*