D. E. STETSON, as Trustee in Bankruptcy of the Estate of Willard Odegaard, Bankrupt, Plaintiff and Respondent,

v.

INVESTORS OIL, INC., and Anchor Casualty Company, Defendants and Respondents,

and

Pan American Petroleum Corporation, Garnishee and Respondent.

Roy H. PETERSON and Warde F. Wheaton, Plaintiffs and Appellants,

v.

LeRoy LUTZ, Sheriff of Williams County, and D. E. Stetson, as Trustee in Bankruptcy of the Estate of Willard Odegaard, Bankrupt, and Investors Oil, Inc., a foreign corporation, and William D. Walters, Defendants and Respondents,

and

Northwestern National Bank of Minneapolis, et al., Defendants and Appellants,

and

Pan American Petroleum Corporation, Intervening Defendant and Respondent.

Civ. No. 8602.

Supreme Court of North Dakota.

April 22, 1970.

Rehearing Denied May 15, 1970.

Rolfstad, Winkjer & Suess, Williston, for the appellants Roy H. Peterson, and others.

Vogel, Bair & Graff, Mandan, for respondents LeRoy Lutz, Sheriff of Williams County, D. E. Stetson, as Trustee in Bankruptcy, and Anchor Casualty Co.

McIntee, Whisenand & Calton, Williston, for respondent William D. Walters.

Pearce, Engebretson, Anderson & Schmidt, Bismarck, for respondent Investors Oil, Inc.

Bjella & Jestrab, Williston, for respondent Pan American Petroleum Corp.

ERICKSTAD, Judge.

In 1960 Willard Odegaard commenced an action against Investors Oil, Inc., known as Civil No. 9785 in the District Court of Williams County. Investors Oil had drilled an oil well within the area encompassed by the Garrison Reservoir. At about the time that the oil well was completed the water in the reservoir began to rise and would have covered the wellhead unless something was done to protect it. Under the terms of the contract entered into between Mr. Odegaard and Investors Oil, Mr. Odegaard was to construct a mound directly over the wellhead so that it would be protected from the rising water. The action initiated by Mr. Odegaard was to recover payment for the construction of the mound, and although he obtained a verdict of $97,338.97 upon which judgment was subsequently entered, this court on appeal by decision rendered August 17, 1962, reversed the judgment and granted a new trial. Odegaard v. Investors Oil, Inc., 118 N.W.2d 362 (N.D. 1962).

On retrial or thereafter, D. E. Stetson, as trustee in bankruptcy of the estate of Willard Odegaard, was substituted as party plaintiff. This time the jury returned a verdict in favor of the plaintiff and against Investors Oil for $52,933.57. On appeal from the judgment entered on that verdict, this court affirmed the judgment on February 11, 1966. The amount of the judgment on remittitur was $68,521.94. Stetson v. Investors Oil, Inc., 140 N.W.2d 349 (N.D. 1966). A supersedeas bond on appeal in the amount of $40,000 was paid and there is now a balance due on the judgment of $28,521.94.

In November of 1966 a garnishment in aid of execution was initiated in Civil No. 9785 to attempt collection of the balance due on the judgment from oil runs from the well over which Mr. Odegaard had constructed the mound. This brought Pan American Petroleum Corporation into Civil No. 9785 as garnishee. In a further effort to collect the judgment, an execution sale

of the leasehold interest was scheduled by Mr. LeRoy Lutz, the sheriff of Williams County.

To prevent the oil runs from being garnished and the leasehold interests from being sold by the sheriff on execution sale, Roy H. Peterson and Warde F. Wheaton initiated a quiet title action in December of 1966, known as Civil No. 10791, in the District Court of Williams County. At the time that this action was commenced the court issued a restraining order preventing the garnishment and execution sale in Civil No. 9785 until the entire matter could be decided. The proceedings in Civil No. 9785 and the quiet title action in Civil No. 10791 were consolidated for trial and tried to the court in October of 1968. By judgment dated the 17th of January, 1969, the district court held that the leasehold interests of the plaintiffs, as well as all of the appellants in Civil No. 10791, were subject to the judgment in Civil No. 9785. In accordance therewith the court required the garnishee to pay to the sheriff of Williams County on behalf of the trustee in bankruptcy the net proceeds from the oil and gas purchased by the garnishee, Pan American Petroleum Corporation, attributable to the leasehold estates of the owners of participating units (subject to a certain royalty exception not pertinent here), in a sum not to exceed an amount sufficient to satisfy the judgment. In the event that that sum was not sufficient to satisfy the judgment the sheriff was further authorized to proceed with additional garnishments in aid of execution, execution sale, and such other remedies as were provided by law. It is from this part of the judgment that appeal is taken.

Who are the appellants and what do they contend in this lawsuit? To answer that question some general background information is essential.

Investors Oil, Inc., is a Minnesota corporation formed for the purpose of engaging in oil and gas exploratory drilling and is owned by Mr. Robert E. Hanson and Mr. William D. Walters and their respective wives. Incorporated in 1956, Investors Oil ultimately proposed a plan which became known as McGregor Field, Program IIIA, to drill oil and gas wells in Williams County, North Dakota. Thirty-six participating units in the program were sold as securities in the state of Minnesota to approximately twenty-five different owners, who are the appellants or their predecessors in interest in this appeal. These interests were not disclosed to Mr. Odegaard at the time he entered into the contract with Investors Oil to construct the mound.

It should be noted that during the first trial of Civil No. 9785 a counterclaim was filed by Investors Oil making a claim against Mr. Odegaard's bond and interpleading Mr. Odegaard's bonding company for Mr. Odegaard's alleged failure to substantially complete the mound. In the first trial of Civil No. 9785, as well as in the second, the counterclaim of Investors Oil was dismissed by the jury.

The appellants place great significance upon the fact that during the course of the first trial, Mr. Walters and Mr. Hanson both testified that approximately twenty-five people had purchased a total of thirty-six units in the program and that Investors Oil acted as a mere nominee of the owners of the units. It is important to note, however, that Investors Oil was the original owner of record of the leasehold interests and that it remained the only record owner of the leasehold interests from the time the leasehold interests were obtained until quitclaim assignments were made to the participating owners on February 21, 1966, ten days after our court affirmed the judgment in the second appeal in Civil No. 9785.

The appellants, or in some instances their predecessors in interest, as owners of undivided working interests in the oil and gas lease pertinent to this litigation, entered into agreements with Investors Oil on January 1, 1959. Under those agreements, Investors Oil was designated the first party, and the owners of the undivided working interests were designated the second party.

The pertinent parts of the agreement follow:

## I.

*Term.* The term of this contract shall continue until terminated under the provisions of Article XI.

## II.

*Duties of the First Party.* First party shall, using the prudence and diligence of a reasonable man in the care of his own affairs, maintain or cause to be maintained adequate records and accounts of all operations and expenditures made in connection with the subject leaseholds, and it will furnish to second party all information required to properly file Federal income tax returns.

First party will from time to time inspect each property on which operations are being conducted, observe the performance of the operator, and consult with him and make such recommendations as first party deems appropriate in second party's best interests.

## III.

*Expenditure of Second Party's Fund.* First party may from time to time assess second party for his prorata share of the working fund to operate the above described leaseholds. These funds, payable within seven (7) days after assessment, may be expended to pay second party's prorata share of the following costs incurred in connection with the leaseholds, to-wit: (1) geological, geophysical or other scientific services, (2) tests, (3) reworking and repairing productive wells, (4) plugging depleted wells, (5) any and all other expenses incurred by first party in connection with services to be rendered by first party pursuant to this agreement, and (6) fees payable to first party pursuant to this agreement.

## IV.

*Power of Attorney.* Second party hereby appoints first party his attorney-in-fact with full power and authority, subject to second party's right to dissent in accordance with Article VIII hereof: (1) to employ services of any nature to the extent deemed necessary by first party in connection with the above described leaseholds; (2) to take such action as first party deems necessary in connection with the above described leaseholds, including the making of all payments and the collection of all sums which second party may be obligated to make or entitled to receive, all for second party's account; (3) to the extent that the right to purchase the production of any lease is reserved by a predecessor in interest either to himself or to a third person, and to the extent that the holder of that right exercises it, to execute Division Orders to effectuate such sales; (4) to sell the production of any lease and to execute necessary Division Orders and Transfer Orders in connection with such sales, provided, however, that contracts entered into by first party shall be for such reasonable periods of time as are consistent with the minimum needs of the industry under the circumstances, but not to exceed one year, and further provided that second party hereby reserves the right to revoke this power, at will, with respect to any lease individually or all leases collectively; (5) to sell or otherwise dispose of second party's interest in any or all of the above described leaseholds, provided, however, that second party's consent thereto, must first be obtained.

## V.

*Indemnification.* First party shall not be liable for any action or omission to act except willful misfeasance or malfeasance; second party shall, with respect to second party's interest, indemnify first party against any liability or obligation with respect to the above described leaseholds, whether based upon any document

which first party may execute in connection therewith or otherwise, it being the intent that the liabilities and obligations imposed by any of the acts or documents shall, proportionately to second party's interest, be second party's.

## VI.

*First Party as Nominee.* Title to such of the undivided interests in the above described oil and gas leaseholds as are in the name of first party shall remain in the name of first party, as nominee for second party, except that should legal principal so dictate first party may designate a third person to take title as nominee for that purpose.

The designation of first party of nominee shall terminate upon the death of second party and may be revoked by second party at any time by a thirty (30) day notice thereof in writing. Upon such termination, first party shall assign whatever interests it may hold as nominee for second party to second party. No such termination of nomineeship shall terminate second party's obligations created by this agreement, all of which said obligations are in all instances several rather than joint.

## VII.

*Compensation and Reimbursement of Expenses to First Party.* First party shall be entitled to receive reimbursement of all expenses incurred by it in connection with the above described leaseholds, of which second party shall pay his prorata share.

First party shall be entitled to receive as compensation for services rendered pursuant to this agreement (a) a reasonable fee not in excess of Thirty ($30.00) Dollars per month for each producing oil or gas well, of which second party shall pay his prorata share, and (b) a sum of money equal to five (5%) per cent of all moneys expended in connection with the development of the above described leaseholds, of which second party shall pay his prorata share. Such compensation may be deducted by first party from the funds of second party as such funds are assessed and received by first party, subject, however, to adjustment upon termination of this contract.

\*　　\*　　\*　　\*　　\*　　\*

## XI.

*Termination of Contract.* Other provisions of this agreement to the contrary notwithstanding, either of the parties hereto shall have the right to terminate this agreement at will by providing the other party hereto with written notice of such termination. Upon the termination of this contract by either party, first party shall: (1) return to second party all such of his funds then in the hands of first party as have not as of the time of revocation been committed to a use proper under the provisions of this agreement, and (2) upon the request of second party, assign to second party such undivided interest in the properties described in "Exhibit A" as first party may hold as nominee for second party; second party, at his option, may elect to release to first party his interest in any particular lease rather than accepting an assignment of such interests.

\*　　\*　　\*　　\*　　\*　　\*

It was under this agreement with each of the owners of participating units that Investors Oil drilled the well and entered into the contract with Mr. Odegaard for the construction of the mound to protect the well, and it is the leasehold interest in the oil produced from this well that is sought to be garnished.

It is basically the contention of the appellants that inasmuch as this agreement designates Investors Oil as an "agent," which it does in one of the introductory "Whereas" clauses, and because it later designates Investors Oil as "nominee," Investors Oil is a mere agent and that there-

fore under agency-principal law, when Mr. Odegaard learned during the progress of the first trial in Civil No. 9785 that that was the legal situation, Mr. Odegaard should have brought the appellants into the lawsuit as defendants, and that in failing to do so he elected to hold only the agent; and as the agent merely held bare legal title to the property, the judgment which was obtained against Investors Oil does not constitute a lien on the interests of the participating owners, they through Paragraph XI of the agreement having demanded and secured an assignment of the participating units to themselves prior to any attempt at garnishment or execution sale.

The trial court in ruling as it did found, notwithstanding the language of the agreement, that the agreement in fact created a trustee-beneficiary relationship between Investors Oil and the owners of the participating units. In so doing it relied on Anderson v. Elliott, 1 Ill.App.2d 448, 117 N.E.2d 876 (1954).

The pertinent part of that decision follows:

As a general rule, all parties interested, which would include *cestuis que trustent*, are necessary parties in suits by or against a trustee relating to the trust or its property. White v. MacQueen, 360 Ill. 236, 243, 195 N.E. 832, 98 A.L.R. 1115. However, because of the existence of numerous and varied instances of exception, it has been said that "whether beneficiaries should be made parties to a suit affecting the trust rests in the sound discretion of the court, and depends upon the facts and circumstances of each case," Rothbart v. Metropolitan Trust Co., 307 Ill.App. 271, 279–280, 30 N.E.2d 183, 187, and that "in general a trustee represents his *cestui que trust* in actions to which he is a party." Campbell v. Albers, 313 Ill.App. 152, 167, 39 N.E.2d 672, 679.

In any event, there are two well-established exceptions to the general rule that the *cestuis que trustent* are necessary parties in actions by or against a trustee relating to the trust or its property. The first is where the absent parties are properly represented. When, in such case, the trustee is made party to a suit affecting the *cestuis'* interest, the latter are as much bound by the decree rendered in the suit as if they were individually made parties thereto, for the reason that their interests receive actual and efficient protection. White v. MacQueen, supra. Thus, for example, where the trustee is authorized to act in some appropriate and particular manner with regard to the legal title, the *cestuis* are not necessary parties. Kerrison v. Stewart, 93 U.S. 155, 160, 23 L.Ed. 843; Manson v. Duncanson, 166 U.S. 533, 543, 17 S.Ct. 647, 41 L.Ed. 1105; Colorado & Southern Ry. Co. v. Blair, 214 N.Y. 497, 513–514, 108 N.E. 840. Where, for example, the litigation does not concern the rights of the trustee and the *cestuis*, as between themselves, in any way, the *cestuis* are not necessary parties. Wollenberger v. Hoover, 346 Ill. 511, 576, 179 N.E. 42; Campbell v. Albers, supra; Matter of Estate of Straut, 126 N.Y. 201, 212, 27 N.E. 259; Colorado & Southern Ry. Co. v. Blair, supra. The second exception to the general rule arises where the beneficiaries are very numerous, so that the delay and expense of bringing them in becomes oppressive and burdensome. In such case they will not be deemed necessary parties where the trustee representing them is made a party. White v. MacQueen, supra.

Anderson v. Elliott, 1 Ill.App.2d 448, 117 N.E.2d 876 (1954).

It was the view of the trial court in the instant case that under the circumstances of this case the interests of the beneficiaries, namely the owners of the participating units, were affected by the ac-

tion and by the resultant judgment, notwithstanding they were not named parties in the action.

The owners of the participating units contend, however, that *Anderson* may be distinguished from this case because in *Anderson* an express trust existed, whereas in this case no trust existed either express or implied.

Mr. Stetson asserts that the trial court properly relied on *Anderson* as a basis for its decision and strongly argues that if it should be found that a trust relationship was not created by the agreement that nevertheless the trial court was correct in its conclusion that the judgment constitutes a lien on the participating interests.

He asserts that Rule 17(a) of the North Dakota Rules of Civil Procedure is relevant here:

> (a) Real party in interest. Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; * * *.

It is his view that in asserting the counterclaims in both of the trials in Civil No. 9785, Investors Oil was preserving the interests of the owners of the participating units, who were the real parties in interest. He further refers us to 50 C.J.S. Judgments § 771, page 300, which reads:

> The conclusive effect of a judgment is on the real party in interest, and it makes no difference that there were nominal parties on the record, or that the action was prosecuted or defended by a nominal party. * * *

Another reference is:

> Where a suit is prosecuted by one person for the use of another, the latter being the assignee or equitable owner of the claim and the real party in interest, it is the latter who is bound by the judgment, * * *.

50 C.J.S. Judgments § 772, page 301.

In support of their position the appellants have referred us to Comments *c, d, e,* and *h* of Section 8 of Restatement of the Law, Trusts 2d.

We have not found these references to be of appreciable help; however, we do note that the third paragraph under Comment *h* infers that a relationship consisting of both agency and trust may exist at one time and that an "agent-trustee" can in his capacity as agent subject his principal to liabilities in contract or tort.

That paragraph reads:

> So also, an agent-trustee can in his capacity as agent subject his principal to liabilities in contract or tort, although the beneficiary of a trust is not as such personally subject to liabilities to third persons incurred in the administration of the trust. See § 274.

1 Restatement of Trusts 2d, § 8, Comment *h,* p. 25 (1959).

The appellants further rely on decisions cited in their brief, including Hugener v. Greider's Wooden Shoe, Inc., 108 Ill.App. 2d 98, 246 N.E.2d 323 (1969); and Kaisershot v. Gamble-Skogmo, Inc., 96 N.W.2d 666 (N.D.1959). We have studied these decisions, especially the preceding two, upon which the appellants seem to rely most heavily, and find them distinguishable upon the facts.

We think it is especially pertinent that in the instant case title was allowed to remain in Investors Oil until after the judgment was affirmed by our court and the rights of the parties had become final.

It is also important to note the extent of the participation by the owners of the units in the first two trials and appeals

to our court in Civil No. 9785. In fact, this participation is conceded, but the appellants attempt to explain it away as in no way binding them, it having been only in the form of advice from a principal to an agent.

Exhibit 7 of the stipulation of facts contains copies of correspondence between Investors Oil and the owners of the participating interests obtained through interrogatories.

On October 6, 1960, a notice was sent to the owners of the participating interests that a meeting would be held in the office of Investors Oil, "to discuss the impending lawsuit with Mr. Odegaard relative to his failure to complete our mound. A majority in interest will decide the various routes your management will pursue."

A form of ballot was contained with the notice asking for approval of one of two alternate plans, the first to attempt to settle with Mr. Odegaard, and the second to pursue the lawsuit to a conclusion.

On November 4, 1960, Investors Oil sent a letter to all the owners of the participating units advising them of the outcome of the first trial, informing them regarding post-trial motions, and stating that an appeal would be taken to the supreme court of North Dakota if the post-trial motions were not granted. The owners of the participating units were informed that prior to any new trial it would be advisable to have additional test borings and that they would be advised of the cost of the proposed borings as soon as the cost was known.

On December 5, 1961, Investors Oil informed the owners of the participating units of the appeal to the supreme court of North Dakota and the supersedeas bond required. The owners of the participating units were further informed that in order to pay for additional boring costs and related studies, the production run checks normally paid in November and December would be withheld.

The owners of the participating units apparently signed the indemnity agreements regarding the supersedeas bond on the first appeal, as Mr. Hanson informed them on August 16, 1963, that it was a pleasure for him to be able to return the indemnity agreements held as security by the Northwest National Bank of Minneapolis because the first judgment had been reversed by the supreme court of North Dakota.

It can also be concluded that the ballot taken before the first trial favored Plan Two, to pursue the lawsuit to a conclusion, as the letter of August 16, 1963, in the last paragraph states:

The recent events have justified our previous position. Our prayer now is for a jury to act in such a way that their judgment can be defended.

On August 30, 1963, Mr. Hanson sent a notice of a meeting to the owners of the participating units and informed them of the time of the second trial. In the notice they were informed that counsel for Investors Oil "has suggested we have a figure in which we are willing to settle the case. This is a similar thing we did prior to the first trial."

On September 10, 1963, a report was sent to the owners of the participating units informing them that the meeting of September 4, 1963, had been held and what had taken place. A part of the report reads: "The prime issue before us was then discussed, i. e. what figure would we be willing to settle the case with the bonding company, Anchor Casualty Company of St. Paul. Their maximum liability is $70,000. After everyone had a chance to express his views, a motion was made, seconded and unanimously carried to offer settlement of $50,000 payable to us. This amount has been communicated to our attorneys in Bismarck, should pretrial negotiations discover an urge to settle the case."

In September, 1963, during the course of the new trial, Mr. Odegaard's attorneys offered to settle his claim for $30,000 and a release of all claims against his bond. This offer was rejected. The attorneys for Investors Oil offered to settle the claim of Investors Oil for $50,000.

On October 7, 1963, Investors Oil notified the owners of the participating units of the judgment in the second trial and stated that a meeting would be held to determine if the participants should accept the judgment or appeal to the supreme court of North Dakota.

A supersedeas bond on the second appeal was required in an amount of $40,000 and all of the owners of the participating units executed a personal indemnity with respect to the bond under date of June 17, 1963.

On March 2, 1966, Mr. Hanson informed the owners of the participating units that the second appeal had been lost and that it was now necessary to make an assessment against them of $1,150 per unit to pay the bond. This amount was paid per unit to satisfy the bond.

Another factor which we consider important in this case is that no new consideration passed between Investors Oil and the owners of the participating units when assignment was requested to be made and actually was made after the judgment in the second appeal was affirmed.

■ Without determining whether an agency-principal relationship or a trustee-beneficiary relationship existed between Investors Oil and the owners of the participating units, we conclude that the owners of the participating units are bound by the judgment obtained against Investors Oil in Civil No. 9785 on the basis of the doctrine of res judicata. It is our view that privity existed between Investors Oil and the owners of the participating units and that accordingly the owners of the participating units are bound by the judgment against Investors Oil. As this action lies in equity, we must attempt to do equity. It is our opinion that the contrary view, which holds that Mr. Odegaard or the trustee of his estate in bankruptcy must lose in this case because in bringing the action against Investors Oil there was an election of remedies, would, if followed, give the owners of the participating units the benefit of the mound, i. e. the oil from the well, while at the same time excuse them from paying for it. Such a result could under no reasonable view of the situation be considered equitable.

■ In so concluding, we take special cognizance of the general philosophy expressed in 46 Am.Jur.2d Judgments, Section 535:

*Persons Participating in Litigation.*

The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies, is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties. The rule stated broadly is that a judgment recovered in an action is res judicata or conclusive, as to the issues adjudicated therein, in favor of or against a person who, though not an actual party to the record in that action, prosecuted the action or the defense thereto, on behalf of a party, or assisted the latter or participated with him in the prosecution of such action or its defense, if the same issue should be raised again in a subsequent action between him and the adversary of the party to whom his as-

sistance was given or with whom he co-operated.

46 Am.Jur.2d, Judgments, Section 535.

■ There is one other matter that we shall briefly discuss before we conclude this opinion and that is the motion made by Pan American Petroleum Corporation as garnishee in Civil No. 9785 and as intervening defendant in Civil No. 10791 for reasonable attorney fees and for such other and further relief as to the court may seem meet in the premises.

As brought out in oral argument before our court and as disclosed in the affidavit of counsel for Pan American Petroleum Corporation, a similar motion was made before the trial court and denied. The order denying that motion was entered by the trial court on November 18, 1968, and there has been no appeal therefrom. That being the case, we are in no position to consider that issue at this time.

Should it be contended that a new issue as to attorney fees has arisen for services required on appeal to this court, for which there was no opportunity to appear before the district court to make the proper request, we conclude that Pan American Petroleum Corporation is not entitled to attorney fees for the employment of attorneys in this court, attorney fees being in this state purely statutory. In this instance we are governed by Section 28–26–01, N.D.C.C., which reads as follows:

Attorney's fees by agreement—Costs, when allowed.—The amount of fees of attorneys in civil and criminal actions must be left to the agreement, express or implied, of the parties. But in civil actions there may be allowed to the prevailing party upon the judgment certain sums by way of indemnity for his expenses in the action in addition to his disbursements. Such allowances are termed costs.

28–26–01, North Dakota Century Code.

Under that section we see no basis for granting the motion made by Pan American Petroleum Corporation.

For reasons stated in this opinion, the judgment of the trial court is affirmed.

TEIGEN, C. J., and PAULSON, KNUDSON and STRUTZ, JJ., concur.